400 So.2d 782 (1981)
IDEAL MUTUAL INSURANCE COMPANY, Appellant,
v.
Larry WALDREP, Appellee.
No. 80-1509.
District Court of Appeal of Florida, Third District.
June 9, 1981.
Rehearing Denied July 31, 1981.
*783 McCune, Hiaasen, Crum, Ferris & Gardner and John R. Hargrove, Fort Lauderdale, for appellant.
Robert H. Wiggins, Miami Shores, for appellee.
Before DANIEL S. PEARSON and FERGUSON, JJ., and PEARSON, TILLMAN (Ret.), Associate Judge.
PEARSON, TILLMAN (Ret.), Associtate Judge.
Defendant Ideal Mutual Insurance Company brings this appeal from a final judgment entered in favor of plaintiff Larry Waldrep, who sought the recovery of insurance proceeds from a policy issued by Ideal, insuring him against loss to his aircraft. In this complaint, Waldrep alleged that his aircraft was found in the Bahamas totally stripped and that a timely notice of loss was filed. Ideal's answer admitted the existence of the policy, but denied coverage on the grounds that (1) Waldrep failed to give Ideal timely notice of the loss, (2) Waldrep failed to exercise reasonable care, as required by the policy, to protect the aircraft when the loss occurred, and (3) the aircraft was restrained or detained by Bahamian governmental authorities, thereby excluding coverage under the policy. Following a non-jury trial, a final judgment was entered in the plaintiff's favor for the recovery of the full policy benefits.
Ideal's points on appeal parallel the defenses enumerated above; therefore, the discussion must turn on the question of whether the evidence presented, when viewed with all reasonable inferences in favor of the appealed judgment, supports the findings of the trial court. See Lubrano v. Macauley, 125 So.2d 911 (Fla. 2d DCA 1961). The evidentiary facts are substantially uncontroverted.
On November 23, 1978, Waldrep lent his aircraft to an acquaintance, Ed Harmon, for a one day trip to the Bahamas. Because Harmon had not returned by the next morning, Waldrep made inquiries to the U.S. Coast Guard, the Federal Aviation Administration and the Bahamian authorities. He was told that no flight plan had been filed, but was advised by the Coast Guard that an aircraft had, in fact, been reported going down over Andros Island. Waldrep *784 flew to Andros the next day in search of the missing aircraft, but was not successful. A few days later, he located the aircraft on an uninhibited island and thereupon notified the U.S. Coast Guard and the Bahamian authorities. U.S. Customs officers and Bahamian police officials then went to the site of the aircraft and found the dead body of Ed Harmon in the cockpit. At that time, Waldrep was told by the Bahamian authorities that the aircraft would not be released to him until an investigation had been conducted. Then, on December 2, 1979, a U.S. Customs officer and Bahamian authorities landed next to the aircraft, finding the remains of Ed Harmon and a large quantity of marijuana nearby. They also found that the aircraft had been damaged both by a bullet hole in the right wing flap and by the saturation of Harmon's body fluids throughout the cockpit. (The Customs officer stated that no one could fly the aircraft without a "respirator.")
Because of the threat of the forfeiture of his aircraft, Waldrep met for two days with Bahamian police officials at a location known as Fresh Creek and was advised that the aircraft would not be released until the investigation had been concluded. Upon returning to Florida, Waldrep contacted the United States Embassy in Nassau and learned that he could remove the aircraft to Fresh Creek, but only in the company of a Bahamian police officer.
Waldrep testified that because he heard "airport scuttlebutt" that the Bahamian authorities would charge him a large sum to release the aircraft, he decided to retrieve it on his own and bring it back to the United States without Bahamian authorization. In attempting to carry out this plan, he searched for a helicopter to take him to the site of the aircraft. When he could not find one, he decided to go to the island by boat with "a couple of guys" in order to fuel the aircraft and to fly it off the island. He waited until January 15, 1979, for the proper weather, but then determined to fly over to see the aircraft. Only then, when he found it stripped, did he notify Ideal of the loss.
On these facts, the trial judge made the following findings:
"1. Defendant IDEAL MUTUAL INSURANCE CO. issued policy # AHL 00 92 08 covering a Maule M-5, N-5629B, belonging to Larry Waldrep.
"2. On/about November 26, 1978, LARRY WALDREP allowed Ed Harmon to use his aircraft. When the aircraft was not returned, LARRY WALDREP made numerous requests of the U.S. Coast Guard, Federal Aviation Administration, and the Bahamian authorities to locate the aircraft. On/about November 28, 1978, LARRY WALDREP located the aircraft on Little Woods Cay, Andros, Bahamas, where it appeared to be in good condition
"3. LARRY WALDREP made numerous calls to the Bahamian authorities and to the U.S. Embassy in Nassau seeking assistance in retrieving his aircraft. He also made inquiries of helicopter operations in the Miami area, but none were available for the trip.
"4. On/about January 16, 1979, LARRY WALDREP flew over his aircraft and found it in a stripped condition with the motor removed, holes in the wings, the fuel tanks removed, and the wheels taken off. LARRY WALDREP, on/about January 18, 1979, reported the loss to the agents of Defendant IDEAL MUTUAL INSURANCE CO.
"5. The Bahamian Government, even though the aircraft may not have cleared customs, did not forfeit or seize the aircraft because of the cooperation of the owner.
"6. The aircraft was not utilized for an illegal purpose.
"7. The aircraft was not confiscated, nationalized, seized, restrained, or detained by the government of the Bahamas.
"8. There was no showing that the insured did not comply with all terms and conditions of the insurance policy.
"9. There was no showing that the insurance carrier was prejudiced by the conduct of the owner."
*785 Ideal argues that the notice of loss was untimely and that Waldrep did not sufficiently rebut the presumption of prejudice to Ideal. The pertinent policy provisions state:
"Coverage F ... [Ideal agrees] [t]o pay for direct loss of or damage to the aircraft, hereinafter called loss, occurring ... while the aircraft is not in motion ..."
"Coverage G ... [Ideal agrees] [t]o pay for direct and accidental loss of or damage to the aircraft, hereinafter called loss, occurring while the aircraft is in motion ..."
* * * * * *
"DEFINITIONS ... 2 ... `Occurrence' means an accident, or a continuous or repeated exposure to conditions, which results in injury during the Policy Period ..."
* * * * * *
"CONDITIONS ... 8. Named Insured's Duties When Loss Occurs  Coverages F and G. When loss occurs the Named Insured shall:
(a) protect the aircraft, whether or not the loss is covered by this Policy...
(b) give notice thereof as soon as practicable to the Company or any of its authorized agents ..."
The failure of an insured to give a timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under the policy. See Boyd v. Pennsylvania National Mut. Cas. Ins. Co., 195 So.2d 259 (Fla. 4th DCA 1967). Although the trial judge indirectly found in Finding No. 8 (set out above) that the notice of loss was timely, and in Finding No. 9 that there was no showing of prejudice, nonetheless, the failure of an insured to give notice of loss to his insurer in accordance with the provisions of the policy creates a presumption of prejudice to the insurer. See Mount Vernon Fire Insurance Company v. Editorial America, S.A., 374 So.2d 1072 (Fla. 3d DCA 1979). In such instance, the insured may recover only upon a showing that the late notice did not cause prejudice. See H.S. Equities, Inc. v. Hartford Accident and Indemnity Co., 334 So.2d 573 (Fla. 1976).
In considering the trial court's finding that the notice of loss was timely, we note the well-established principle that such a finding arrives in this court with a presumption of correctness. See Apeco Marina, Inc. v. St. Paul Fire & Marine Insurance Company, 301 So.2d 136 (Fla. 3d DCA 1974). The determinations of (i) whether the notice provision was complied with and (ii) what is a reasonable time under the surrounding circumstances are questions of fact, see Hendry v. Grange Mutual Casualty Co., 372 F.2d 222, 226 (5th Cir.1967), and will not be overturned unless the finding is against the weight of the evidence. See DuPont v. Parker and Company of Florida, 190 So.2d 388 (Fla. 3d DCA 1966).
In the present case, the record reveals no reasonable interpretation of the evidence which will support a finding that the notice of loss was given as soon as practicable. It should be borne in mind that the insured could not wait until the full extent of the damage to the aircraft was apparent, because the policy covered any "occurrence" resulting in injury to the aircraft. Notice is necessary when there has been an occurrence that should lead a reasonable and prudent man to believe that a claim for damages would arise. See Mountainair Municipal Schools v. United States Fidelity and Guaranty Company, 80 N.M. 761, 461 P.2d 410 (1969);[1] and see generally 45 C.J.S. Insurance § 1056 (1946).
The decision of whether a policy's notice provisions have been complied with in a particular case must be evaluated on the facts of that case. See Laster v. United States Fidelity & Guaranty Company, 293 So.2d 83 (Fla. 3d DCA 1974). No fact in this case justified a delay from late November, *786 when Waldrep discovered the aircraft on the ground and U.S. Customs and Bahamian authorities reported the pilot dead in the cockpit, until the following January 15, when notice was given. Even if the reasonable reporting date is extended until early December, when Waldrep knew that the downed aircraft was on a remote island with the pilot murdered, with a wing damaged by gunfire and with the interior damaged by the saturation of human body fluids, the delay to mid-January cannot be justified.
Waldrep's plans to rescue the aircraft are of no moment in determining the necessity for notifying his insurance carrier of the fate of his aircraft. Whatever Waldrep's motives, his subjective plans did not affect the necessity of notice. Cf., Deese v. Hartford Accident and Indemnity Company, 205 So.2d 328 (Fla. 1st DCA 1967); and Morton v. Indemnity Insurance Company of North America, 137 So.2d 618 (Fla. 2d DCA 1962).
The remaining question is whether the proof in this record supports a finding that the extended delay resulted in no prejudice to Ideal. We find that the trial judge overlooked the fact that in the absence of proof, the failure to give timely notice of loss is presumed prejudicial. See Mount Vernon Fire Insurance Company v. Editorial America, S.A., 374 So.2d 1072 (Fla. 3d DCA 1979), cited above for this rule. The record is without proof, and the appellate briefs contain little argument, on this point. Waldrep suggests that before he discovered that the aircraft was stripped, he had nothing to report. This position is not in accordance with the law set out above. There was clearly an extended delay in reporting the accident or occurrence, which not only could have  and in all probability would have  resulted in extensive damage, but which also could have resulted  and did, in fact, result  in total loss. Waldrep argues he was trying to eliminate or reduce the damage. It is only proper, however, that Ideal, as his insurer, be entitled to notice and an opportunity to eliminate or reduce its loss. Ideal was denied this opportunity by Waldrep's failure to give timely notice of the accident or occurrence. The court's conclusion that no prejudice was shown is insufficient under the circumstances of this case. We need not speculate upon what the insurer could have done. Ideal was simply entitled to notice and the opportunity to know the circumstances. We conclude that the trial judge misinterpreted the facts and misapplied the law in his conclusion that prejudice was not shown.
Having reached the decision that the judgment must be reversed, we need not discuss the remaining points on appeal. The judgment is reversed and the case remanded with directions to enter a judgment for the defendant, Ideal Mutual Insurance Company.
Reversed and remanded with directions.
NOTES
[1] Partially overruled on other grounds in State Farm Mutual Automobile Insurance Company v. Gonzales, 83 N.M. 296, 491 P.2d 513 (1971).