**FLORIDA MUNICIPAL LIABILITY SELF INSURERS PROGRAM,**
**Plaintiff,**

v.

**MEAD REINSURANCE CORPORATION, an Illinois corporation, Defendant/Third–Party Plaintiff,**

v.

**The TOWN OF PEMBROKE PARK, a Florida municipality, Third–Party Defendant.**

**No. 88–6427–Civ.**

United States District Court,
S.D. Florida,
West Palm Beach Division.

June 3, 1992.

Motions For Post–Judgment Relief Denied
June 30, 1992.

Kevin O'Connor of O'Connor, Sinclair & Lemos, P.A., Coral Gables, Fla., for plaintiff, Florida Mun. Liability Self Insurers Program.

Ricardo Cata of Wilson, Elser, Moskowitz, Edelman & Dicker, Miami, Fla., for defendant/third-party plaintiff, Mead Reinsurance Corp.

Neil Flaxman of Flaxman & Flaxman, Coral Gables, Fla., and A.J. Ryan, Jr., Dania, Fla., for third-party defendant, The Town of Pembroke Park.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

PAINE, District Judge.

Following a one day non-jury trial, the court, based on the record and the evidence

---

presented, makes, from its front row center seat, the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## I. FINDINGS OF FACT

All the world's a stage,
And all the men and women
merely players:
They have their exits and their entrances;
And one man in his time
plays many parts. . . .

—William Shakespeare, *As You Like It.*

### *Playbill: Introducing the Actors*

1. The Plaintiff, Florida Municipal Liability Self Insurers Program ("FMLSIP"), is an organization consisting of several political subdivisions of the state of Florida that have joined together and established a risk management program.[1] Its members make payments into a general fund, out of which judgments and settlements are paid.[2]

2. The Defendant, Mead Reinsurance Corporation ("Mead"), is an Illinois corporation whose principal place of business is the State of Ohio. Mead is authorized to do business in the State of Florida and, at all relevant times, afforded excess insurance coverage to the FMLSIP.

3. The Third–Party Defendant, The Town of Pembroke Park ("Pembroke" or "Town"), a municipality located in Broward County, Florida, is a member of the FMLSIP. At all times material, the FMLSIP provided the Town with primary insurance coverage limited to $50,000 per person and $100,000 per occurrence. Through its membership in the FMLSIP and/or endorsement, the Town is an insured under Mead's policies.

### *The Overture: Tuning Up for Litigation*

4. In October of 1978, Pembroke police officers enlisted the aid of the Fraternal Order of Police ("FOP") to represent them in labor negotiations with the Town. After a period of bargaining, the parties signed a collective bargaining agreement ("CBA") covering the period October 1, 1979, through September 30, 1980.

5. Thereafter, Pembroke and its Mayor refused to negotiate a new CBA, informing the FOP that it was considering a contract with an outside agency for police services. On July 9, 1980, the Town's Commissioners voted to enter into an agreement, effective October 1, 1980, with the Broward County Sheriff to perform all police work for Pembroke. On September 30, 1980, just one day before the new agreement went into effect, the Town's entire police force was discharged.

### *Act I: The Curtain Rises*

6. On September 10, 1980, the FOP filed an unfair labor practice charge with the State of Florida Public Employees Relations Commission ("PERC"), asserting that Pembroke violated Florida Statute Sections 447.501(1)(a), (b) and (c)[3] by refusing to meet with FOP representatives to negotiate a successor CBA, and by unilaterally, and in response to the police officer's pro-

---

1. Florida Statutes Section 768.28(1) waives the sovereign immunity of the state or any of its agencies or subdivisions for actions based in tort. Section 768.28(14)(a), in turn, authorizes the "state and its agencies and subdivisions ... to enter into risk management programs ... in anticipation of any claim, judgment, and claims bill which they may be liable to pay. . . ."

2. Specifically, the agreement provided:

   The Program will pay on behalf of the insured all sums which the insured shall become legally obligated to pay by reason of liability imposed by law, including § 768.28 of the State of Florida Statutes of 1975, insofar as the named insured may legally do so, for damages because of (A) Bodily Injury or, (B) Property Damage or, (C) Errors and Omissions or, (D) Personal Injury to which this policy applies, caused by an occurrence which takes place during the policy period.

3. §§ 447.501(1)(a), (b) and (c) provide that:
   (1) Public employers or their agents or representatives are prohibited from:
   (a) Interfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under this part.
   (b) Encouraging or discouraging membership in any employee organization by discrimination in regard to hiring, tenure, or other conditions of employment.
   (c) Discharging or discriminating against a public employee because he has filed charges or given testimony under this part.

tected activities, contracting out work so as to avoid bargaining or otherwise dealing with FOP.

7. Finding the charge sufficient, PERC ordered Pembroke to file an answer before October 8, 1980. When no answer had been filed by October 14, 1980, PERC issued an order directing the Town to show cause, within ten days, why its failure to answer should not be deemed an admission of the material facts contained in the charge.

8. Pembroke failed to demonstrate good cause and the facts were deemed admitted. PERC ordered full reinstatement and backpay, concluding, *inter alia*, that the Town engaged in an unfair labor practice within the meaning of Section 447.501(1)(a) and (b) by:

> entering into a contract for police services with the Sheriff of Broward County on July 9, 1980, to avoid bargaining collectively and otherwise dealing with the FOP, to avoid entering into a new collective bargaining agreement with the FOP, to discourage membership in the FOP, and to retaliate against the FOP and its members for having filed grievances against the Town....

9. Pembroke's appeal of the PERC Order to the Florida First District Court of Appeal was ultimately dismissed for lack of prosecution; it satisfied the Judgment and did not file a claim with the FMLSIP.

### Act II: The Plot Thickens

10. In 1982, four of the Town's discharged police officers, John Healy, Stan Frost, Joe Brown and Jesse Politi commenced separate actions[4] ("Civil Rights Actions") in United States District Court for the Southern District of Florida against Pembroke, its Mayor and the Town's Commissioners based on the same factual basis as the PERC proceeding. Each Plaintiff sought monetary and declaratory relief pursuant to Title 42, United States Code, Section 1983.[5]

11. Prior to trial, both sides moved for summary judgment. By Order dated May 26, 1986, the court held that as the result of the prior PERC default order, Pembroke was bound, under the doctrine of administrative *res judicata*, on the issue of liability. The Town, therefore, was precluded from defending as to the issue of liability in the Civil Rights Actions. Additionally, the court denied the Plaintiffs' request for compensatory and punitive damages and attorneys' fees, based on a finding that the entitlement to said damages had been reasonably determined by PERC in its award of compensatory back pay.

12. In *Healy v. Town of Pembroke Park*, 831 F.2d 989 (11th Cir.1987), the Eleventh Circuit Court of Appeals upheld the undersigned's ruling with respect to liability and reversed as to the issue of damages. The action was remanded for a resolution of the issue.

13. Following a trial on damages, judgments, totalling the sum of $135,000, was entered against Pembroke and in favor of the four police officers. Attorneys' fees and costs amounting to $92,600 were awarded. Pembroke paid the judgments and did not file a claim with the FMLSIP.

### Intermission: Refreshments and Very Little Chit–Chat

14. Pembroke was "represented" in the PERC proceeding and the Civil Rights Actions, from their commencement in 1982 through April 1986, by the Town's Attorney, A.J. Ryan, Jr. ("Ryan"). During this period, no offers of settlement were voiced by either Pembroke or the FMLSIP to the Civil Rights Plaintiffs.

---

**4.** The four suits, Case Nos. 82–6368–CIV–PAINE, 82–6369–CIV–PAINE, 82–6441–CIV–PAINE and 82–6442–CIV–PAINE, were ultimately consolidated before the undersigned pursuant to Southern District of Florida General Rule 6(C).

**5.** Section 1983 provides, in relevant part, that: Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

15. Pembroke did not tell or inform the FMLSIP about: (1) the PERC proceeding; (2) the default entered on liability against the Town; and (3) of the commencement and pendency of the Civil Rights Actions, until March of 1985.

16. In April of 1986, approximately one month prior to the entry of the court's summary judgment Order, the FMLSIP, in an attempt to minimize Pembroke's prejudice, retained the firm of Fleming, O'Brien & Fleming to assist Ryan.[6]

17. On April 30, 1986, the FMLSIP notified Pembroke that it was reserving the right to deny coverage because it had been "severely prejudiced" by the untimely notice of the PERC default and the Civil Rights Actions.

18. In a Case Evaluation Report dated December 12, 1986, Fleming, O'Brien & Fleming advised the FMLSIP that the Civil Rights Action would have been very defensible as to the issue of liability were it not for the administrative *res judicata* effect of the PERC default order. In the firm's opinion, evidence could have been presented to show that the Town eliminated its police department, not out of anti-union animus, but rather, on the grounds of efficiency and in an effort to save money.

19. Neither Pembroke nor the FMLSIP ever communicated to Mead the existence of the PERC proceeding and the Civil Rights Actions. Mead's first notice of the material facts underlying these events occurred during its review of FMLSIP files in May of 1987.

20. On July 22, 1987, Mead notified the FMLSIP that it was disclaiming coverage, because of prejudice resulting from its late notice, for any claim arising out of the PERC proceeding and the Civil Rights Actions.

*Act III: The Pulse Pounding Climax*

21. On April 20, 1988, the FMLSIP commenced this action in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida seeking declarato-

ry relief with respect to the excess insurance coverage Mead afforded the FMLSIP.

22. The Defendant subsequently removed the action to this court (DE 1), served its Answer, Affirmative Defenses and Counterclaim (DE 5) against the FMLSIP and filed a Third–Party Complaint (DE 6) against Pembroke. In its Counterclaim and Third–Party Complaint, Mead sought judicial determination that the terms and conditions of the excess insurance policies had been materially breached as it had not been given timely notification of the PERC proceeding and the Civil Rights Actions.

## II. CONCLUSIONS OF LAW

Life's but a walking shadow, a poor player
That struts and frets his hour
upon the stage
And then is heard no more; it is a tale
Told by an idiot, full of sound and fury,
Signifying nothing.

—William Shakespeare, *Macbeth*

*The Critic Reacts: I Laughed, I Cried, It Became Part of Me*

23. Mead's excess insurance policies' provisions define an "occurrence" as:

[With respect to bodily injury and property damage liability] an accident, or event including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the stanpoint (sic) of the insured; [with respect to error and omissions liability] any actual or alleged errors or omissions by an insured which results in injury or damage neither expected nor intended from the standpoint of the insured; [with respect to personal injury liability] any injury or damages sustained by any person or organization and arising out of personal injury as defined herein.

24. In the "Conditions" section of the policies, an insured's duties in the event of an occurrence, claim or suit, are:

---

**6.** It is unclear what steps, if any, the FMLSIP undertook between March, 1985 and April, 1986

to protect either itself, Pembroke or Mead relative to the Civil Rights Actions.

A. In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstance thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to [Mead] or any of its authorized agents as soon as practicable.

B. If claim is made or suit is brought against the insured, the insured shall immediately forward to [Mead] every demand, notice, summons or other processes received by him or his representative.

25. Under Florida law, a determination as to whether an insurance policy's notice provisions have been complied with must be evaluated on the facts of each particular case. *Laster v. United States Fidelity & Guar. Co.*, 293 So.2d 83 (Fla.3d Dist.Ct. App.1974). As a general rule, notice is necessary when there has been an occurrence that should lead a reasonable and prudent person to believe that a claim for damages would arise. *Ideal Mut. Ins. Co. v. Waldrep*, 400 So.2d 782, 785 (Fla.3d Dist. Ct.App.1981). What is "reasonable" depends on the circumstances and is ordinarily a question of fact for the fact finder. *Sims v. American Hardware Mut. Ins. Co.*, 429 So.2d 21, 22 (Fla.2d Dist.Ct.App. 1982).

26. The failure of an insured to give timely notice of loss in contravention of a policy provision is a legal basis for the denial of coverage under the policy, *Ideal Mut.*, 400 So.2d at 785, and creates a presumption of prejudice to the insurer. *Bankers Ins. Co. v. Macias*, 475 So.2d 1216, 1218 (Fla.1985). This presumption, however, may be overcome by competent evidence showing that the insurer has not been substantially prejudiced by the lack of notice. *Nat'l Gypsum Co. v. Travelers Indem. Co.*, 417 So.2d 254, 256 (Fla.1982).

### Mead Reinsurance Corporation: Two Thumbs Up

27. Pembroke and the FMLSIP materially breached the terms and conditions of the insurance contracts in that they did not: (1) notify Mead of the commencement and pendency of the PERC proceeding and the Civil Rights Actions, within a reasonable time of their commencement; and (2) protect Mead's position relative to these events.

28. Their breach, while default on the issue of liability was entered in the PERC proceeding and the PERC Order was given administrative *res judicata* effect in the Civil Rights .Actions, substantially prejudiced Mead.

29. The Town and the FMLSIP have not met their burden of overcoming, by means of competent evidence, the presumption that Mead was substantially prejudiced by their lack of timely notice.

### Denouement

30. Mead, therefore, does not have an obligation to defend and/or indemnify the Plaintiff and the Third–Party Defendant with respect to any damages, costs and attorneys' fees incurred by either Pembroke or the FMLSIP as a result of the Civil Rights Actions.

### Curtain Call

The play is done; the curtain drops
Slow falling to the prompter's bell: '
A moment yet the actor stops,
And looks around, to say farewell.
It is an irksome word and task:
And, when he's laughed and said his say,
He shows, as he removes the mask,
A face that's anything but gay.

—William Makepeace Thackeray, *The End of the Play.*

It is hereby ORDERED and ADJUDGED that:

(1) Judgment shall entered in favor of Mead and against the FMLSIP on the Plaintiff's Complaint.

(2) Judgment shall be entered in favor of Mead and against the FMLSIP on the Defendant's Counterclaims.

(3) Judgment shall be entered in favor of Mead and against Pembroke on the Third–Party Plaintiff's Complaint.

(4) Mead shall have eleven (11) days from this date to submit a Final Judgment in conformity with the Findings of Fact and Conclusion of Law.

DONE and ORDERED.

## ORDER ON MOTION FOR POST-JUDGMENT RELIEF

This matter comes before the court on the Plaintiff's, Florida Municipal Liability Self Insurers Program ("FMLSIP"), and the Third–Party Defendant's, The Town of Pembroke Park ("Pembroke"), Motion for Certification, for New Trial, for Rehearing and for Amendment of Findings of Fact and Conclusions (sic) (DE 59). Having reviewed the record and relevant authorities, the court enters the following Order.

If it is true that 'good wine needs no bush,' 'tis true that a good play needs no epilogue.

—William Shakespeare, *As You Like It.*

### Encore

The undersigned, as the finder of fact, will not alter or amend his "review" of this drama, the Findings of Fact and Conclusions of Law (DE 56), as the court has assessed the documentary and testimonial evidence, weighed its credibility, and utilized the appropriate standard under Florida law. Neither is a new trial, pursuant to Rule 59 of the Federal Rules of Civil Procedure,[1] justified. "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Del Rio Dist. v. Adolph Coors Co.,* 589 F.2d 176, 179 n. 3 (5th Cir.1979)[2] (quoting 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2803 (1973 and 1991 supp.)).

### Broadway Bound?

Finally, it is noted that the FMLSIP and Pembroke seek to have the following question certified and submitted to a Florida appellate court for resolution: Who bears the burden of proof as to prejudice when an insured and insurer give late notice to a reinsurer? While such a procedural mechanism would surely help federal district courts address cunning and novel issues of Florida law, one does not exists at this time. Article V, Section 3(b)(6) of the Florida Constitution only grants the Florida Supreme Court jurisdiction to review "a question of law certified by the Supreme Court of the United States or a United States Court of Appeals which is determinative of the cause and for which there is no controlling precedent of the supreme court of Florida." Therefore, if the parties wish, they may file a Notice of Appeal, taking this "off Broadway" production to the "bigtime," that is, Atlanta, Georgia, where the Eleventh Circuit Court of Appeals may certify the very question to highest and most respected critic in the state, the Florida Supreme Court.

### The End

Which of us is happy in this world?
Which of us has his desire? or, having it, is satisfied?—
Come, children, let us shut up the box and the puppets,
for our play is played out.

—William Makepeace Thackeray, *Vanity Fair.*

It is hereby ORDERED and ADJUDGED that the Plaintiff's and the Third–Party Defendant's Motion for Certification, for New Trial, for Rehearing and for Amend-

---

**1.** Rule 59 provides, in relevant part, that:
A new trial may be granted to all or any of the parties and on all or part of the issues ... in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in actions at law in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

**2.** The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

ment of Findings of Fact and Conclusions (DE 59) is DENIED.

DONE and ORDERED.