**BURRIS CHEMICAL, INCORPORATED,**
Plaintiff–Appellee,

v.

**USX CORPORATION, Defendant–Appellant.**

**BURRIS CHEMICAL, INCORPORATED,**
Plaintiff–Appellee,

v.

**USX CORPORATION, Defendant–Appellant.**

Nos. 91–2758, 92–1254.

United States Court of Appeals,
Fourth Circuit.

Argued June 15, 1992.

Decided Nov. 18, 1993.

Wayne Lee Emery, Warsaw, VA, argued (S.P. Groves, Sr., Young, Clement, Rivers & Tisdale, Charleston, SC, on brief), for defendant-appellant.

Keith Watson Vaughan, Womble, Carlyle, Sandridge & Rice, Winston–Salem, NC, argued (Jeffrey L. Furr, Womble, Carlyle, Sandridge & Rice, Winston–Salem, NC, George

E. Campsen, Jr., Charleston, SC, on brief), for plaintiff-appellee.

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

## OPINION

WIDENER, Circuit Judge:

This is an appeal from judgment on a jury verdict awarding Burris Chemical, Inc. (Burris) damages against USX Corporation (USX) in the amount of $1,330,719.03.[1] While USX raises on appeal numerous issues contesting this award, the dispositive issue concerns the proper interpretation and application of a notice provision contained in an Agreement of Sale and Purchase of Assets (agreement) executed between Burris and USX. Reviewing the decision of the district court de novo, see Scarborough v. Ridgeway, 726 F.2d 132, 135 (4th Cir.1984), we are of opinion that the language of the notice provision is unambiguous and that Burris did not give timely notification to USX. We are also of opinion that the district court improperly interpreted the notice provision of the agreement and thus improperly submitted the issue of indemnification to the jury. Thus, Burris is not entitled to indemnification. Accordingly, we reverse.

### I.

On April 29, 1983, Burris purchased from USX certain property and assets located in Miami, Dade County, Florida. USX had used this property as a Solvents Distribution Center for part of its Chemicals Division. Among the assets transferred to Burris was a tank farm consisting of at least 42 underground storage tanks. Because A.A. Burris, Jr., the president and principal owner of Burris Chemical, was not familiar with underground storage tanks, he was wary of potential environmental liability and wanted some protection against claims arising from events occurring prior to the closing date of the agreement. Therefore, he bargained during contract negotiations for an indemnification provision that was included in the agreement.[2] In connection with the indemnification provision, USX and Burris also agreed to include in the agreement a notification provision that would preclude liability if not complied with.[3]

In the Spring of 1985 the Metropolitan Dade County Department of Environmental Resources Management (DERM), pursuant to a local regulation, required Burris to determine if any ground-water contamination existed at the tank farm site by sinking 24 monitoring wells. As a result of these monitoring wells, Burris detected ground-water contamination at the tank farm site. Consequently, DERM issued to Burris a Notice of Violation and Orders for Corrective Actions on May 14, 1985.[4]

---

1. Burris has filed a motion to dismiss the appeal. We deny Burris's motion and proceed to the merits. This is an appeal of the common law aspect of the case under F.R.C.P. 54(b); a CERCLA claim has been stayed pending this appeal.

2. The indemnification provision contained in the agreement reads as follows:

 5.4 *Indemnification for Pre– and Post–Transaction Claims*
 [USX] shall indemnify BURRIS and hold it harmless from all claims, demands and actions arising out of or connected with ownership or operation of the Included Assets prior to the close of business on the date of the Closing. BURRIS shall indemnify [USX] and hold it harmless from all claims, demands and actions arising out of or connected with ownership or operation of the Included Assets after such close of business.

3. The notification provision contained in the Agreement states in pertinent part:

 5.5 *Indemnification Procedure*
 If a claim arises or is asserted against [USX] or BURRIS to which indemnification as contained in any provision of this Agreement applies or to which [USX] or BURRIS proposes to assert that such indemnification respectively applies, then [USX] or BURRIS, as the case may be, shall give written notice of the claim to the other party hereto (the "party receiving notice") within sixty (60) days from the date the claim is asserted. (In the event that a lawsuit is the subject of indemnification, the sixty (60) day period will be shortened to fifteen (15) business days and such notice may be verbal.) The omission so to notify the other party hereto shall relieve it from any liability for indemnification hereunder.

4. DERM's May 14th notice of violation stated in pertinent part:

 In violation of Section 24–11(1), PROHIBITIONS AGAINST DISCHARGE; 24–11(3), DISCHARGES AFFECTING WATER QUALI-

In response to the notice, Burris submitted to DERM a bailing plan to correct the situation. Burris conducted this bailing plan from May until the latter part of November when Burris received another directive from DERM dated November 21, 1985. This directive stated that Burris's bailing operation was not removing the contamination and ordered Burris to test all of the underground tanks and submit to DERM a formal remedial action plan within 30 days. Burris had the underground tanks tested and submitted a proposed remedial action plan to DERM on December 23, 1985. By letter dated January 22, 1986, DERM approved Burris's remedial action plan only to the extent that it called for removing the underground tanks.[5]

By letter dated February 25, 1986, Burris first notified USX about the problem with the underground tanks.[6] In response to the notice, USX took no action and refused to indemnify Burris for its clean up costs. Consequently, Burris filed a diversity suit against USX in April 1988 seeking indemnification under § 5.4 of the agreement. A jury returned a verdict upon which judgment was entered which resulted in this appeal.

## II.

Under Florida law,[7] we are to decide as a matter of law whether or not contract provisions are ambiguous. See *Specialty Restaurants Corp. v. Miami,* 501 So.2d 101, 103 (Fla. 3rd Dist.Ct.App.1987). Finding no ambiguity in the contract provisions at issue, we next are to decide as a matter of law the proper construction and interpretation of the contract provisions. See *DEC Electric, Inc. v. Raphael Constr. Corp.,* 558 So.2d 427, 428 (Fla.1990). Although § 5.4 of the agreement states that USX will indemnify Burris for "all claims, demands and actions arising out of or connected with ownership or operation of the Included Assets prior to the close of business on the date of Closing[,]" this indemnification obligation is limited by the notice provision in § 5.5 of the agreement. Section 5.5 states that "[i]f a claim arises or is asserted against [USX] or BURRIS to which indemnification ... applies, then [USX] or BURRIS ... shall give written notice of the claim to the other party ... within sixty (60) days from the date the claim is asserted." Therefore, under the clear and unambiguous language of §§ 5.4 and 5.5, USX did not have to indemnify Burris under the agreement if Burris failed to give to USX proper and timely notice of a claim, demand or action.

As contained in the district court's instructions to the jury,[8] the district court deter-

TY, and Section 24–14, Nuisance Prohibited of the Metropolitan Dade County Environmental Protection Ordinance.

Therefore, pursuant to Section 24–5(15)a and 24–37, of said Ordinance, you are hereby put on notice that on or before 4:00 P.M. the 31 day of May, 1985 you are ordered to correct said VIOLATION pursuant to the requirements of Section 24–12.2 and as outlined in the attached "Groundwater Contamination Spill Cleanup Report."

5. In February 1986, subsequent to DERM's approval of the proposed removal of the tanks, the test results revealed that 9 of 42 underground tanks were leaking.

6. USX claims that Burris did not provide notice of the claim until March 19, 1986. Although the jury did not specially resolve this disputed fact, its resolution is immaterial because we would reach the same conclusion using either date.

7. In a diversity suit federal courts must apply the rules of the forum state when addressing choice of law questions. See *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). South Carolina choice of law rules dic-

tate that if a contract specifies the law that is to govern the contract, then courts must apply the law so specified. See *Bannister v. Shepherd,* 191 S.C. 165, 4 S.E.2d 7, 9 (1939); *Livingston v. Atlantic Coast Line R.R. Co.,* 176 S.C. 385, 180 S.E. 343, 345 (1935). In the instant case, the agreement states that Florida law shall govern the construction and performance of the agreement.

8. When instructing the jury as to the determination of the actual filing date of a claim, demand or action within the meaning of § 5.5 of the Agreement, the district court stated the following:

Now, as to this issue, I will tell you as a matter of law that an order or directive from any governmental agency is a claim, demand or action ... if it's made upon Burris. And that DERM, the Dade County Department of Environmental Response is such a governmental agency. Now, the DERM ... [order to Burris] to do something about the groundwater and contamination satisfies part of your inquiry, because the Plaintiff had to comply with it and follow its directions.

mined as a matter of law that DERM's May 14, 1985 notice of violation was a claim, demand or action within the meaning of § 5.5 of the agreement, and we are of opinion that such instructions were correct. Because Burris did not give notice of this claim to USX until February 25, 1986, Burris's notice was well beyond the 60-day notification period specified in the agreement. Based on our interpretation of the agreement and the factual findings of the district court, we are of opinion that Burris's claim for indemnification under the agreement is barred as a matter of law because of its violation of the 60-day notice provision of § 5.5 of the agreement.

Although the district court properly found § 5.5 of the agreement to be unambiguous as a matter of law, it then improperly interpreted the unambiguous language of § 5.5. While it realized that the assertion of a claim against Burris triggered the 60-day notice provision of § 5.5, the district court stated that the jury must decide two things under § 5.5: when a claim was filed against Burris and when Burris knew or should reasonably have known that the claim was one to which the indemnity provisions of § 5.4 applied. As for the actual filing of the claim, the district court removed this determination from the jury by instructing the jury that DERM's May 14, 1985 notice of violation was a claim, demand or action within the meaning of § 5.5. Having decided the date of the claim for the jury, the district court next instructed the jury concerning the appropriate date from which to ascertain whether or not Burris properly notified USX within the required 60-day period:

> You determine on what date a claim was made against Burris from which a reasonable person standing in Burris' shoes, with Burris' expertise and under the circumstances would or should have known of the claim for indemnification might apply or exist. You determine that date. Then you determine if Burris gave notice within 60-days after that date.

As for the necessity of this latter instruction, the district court stated the following:

> Well, as a matter of law, I have inserted [into the Agreement that notice was prop-

er if made] within 60-days from the time Burris knew or should have known as a reasonable person with their expertise and under their circumstances that the indemnification agreement might apply.

It is on this point, the insertion of a discovery clause into § 5.5 by the corresponding instruction to the jury, that we find the district court in error.

Relying explicitly on *Senfeld v. Bank of Nova Scotia Trust Co.,* 450 So.2d 1157 (Fla. 3d Dist.Ct.App.1984), the district court engrafted a discovery clause into the notice provision contained in § 5.5 of the agreement. In *Senfeld,* the Florida Third District Court of Appeals applied the discovery rule to application of the statute of limitations in the Bank of Nova Scotia's action for conversion. 450 So.2d at 1163. Although the applicable four-year statute of limitations had run as measured from the date of the conversion, the court held that the applicable statute of limitations only began to run when "the plaintiff knows or is chargeable with knowledge of an invasion of his legal right[.]" 450 So.2d at 1162 (citations omitted).

The *Senfeld* decision follows a line of Florida cases recognizing the discovery rule and favoring "application of the blameless ignorance doctrine in those instances where the injured plaintiff was unaware or had no reason to know that an invasion of his legal rights has occurred." *Creviston v. General Motors Corp.,* 225 So.2d 331, 334 (Fla.1969); see *Creviston, supra* (applying discovery rule to statute of limitations in action for personal injury arising from breach of implied warranty in circumstances where warranty not governed by Uniform Commercial Code); *Miami Beach First Nat'l Bank v. Edgerly,* 121 So.2d 417 (Fla.1960) (applying discovery rule to statute of limitations in action for recovery on forged check); *City of Miami v. Brooks,* 70 So.2d 306 (Fla.1954) (applying discovery rule to statute of limitations in action for personal injury based on x-ray received in 1944 but not causing any diagnosable injury until 1949); *Lund v. Cook,* 354 So.2d 940 (Fla. 1st Dist.Ct.App.) (applying discovery rule to statute of limitations in action for negligence in making survey and plat), *cert. denied,* 360 So.2d 1247 (Fla.1978). Although

these cases hold that the discovery rule postpones the commencement of running of the statute of limitations, these cases involve actions for injuries that are governed by statutes of limitations imposed upon the injured parties and over which they had no control. Unlike these cases, however, the 60–day notice provision of § 5.5 was a bargained for contractual term contained in a negotiated contract between two business corporations. No Florida case has applied the discovery rule in such a situation, as Burris freely admits, and we decline to apply it in this case.

 The holding Burris seeks from us in this case, and which was applied in the district court, is quite plainly an expansion of the common law of Florida. Under *Erie Railroad v. Tompkins,* supra, the federal courts sitting in diversity rule upon state law as it exists and do not surmise or suggest its expansion. See, e.g., *Ball v. Joy Technologies, Inc.,* 958 F.2d 36, 39 (4th Cir.1991) (declining to extend damages for emotional distress to exposure to toxic chemicals where such damages were not recognized by state law); *Washington v. Union Carbide Corp.,* 870 F.2d 957, 962 (4th Cir.1989) (declining to recognize a new cause of action for retaliatory discharge not recognized by state law); *Guy v. Travenol Laboratories, Inc.,* 812 F.2d 911, 917 (4th Cir.1987) (declining to recognize an anti-retaliation cause of action to protect employees who refuse to violate the pure food laws which was not recognized by state law). As we have stated, we similarly decline to expand Florida law in this case. *Erie Railroad* "calls on us to apply state law, not, if we can be persuaded to doubt its soundness, to participate in an effort to change it," *Tarr v. Manchester Ins. Corp.,* 544 F.2d 14, 15 (1st Cir.1976). By the same token, we decline the invitation of Burris to affirm the district court's decision on the strength of cases involving insurance contracts in which failure to give notice has been excused for one reason or another. The law involving notice as a term of insurance contracts simply has no application here.

Because we are of opinion that Burris did not timely notify USX pursuant to § 5.5 of the agreement, Burris is barred from seeking indemnification under the agreement as a matter of law. Accordingly, the judgment of the district court is

*REVERSED.*

K.K. HALL, Circuit Judge, dissenting:

Because I believe that the Florida courts would apply the discovery rule to the notice provision of this contract, I must dissent. However, I would remand this case to the district court for a recalculation of damages on the existing record, or alternatively a new trial limited to that issue.

Florida has long held that the discovery rule tolls a statute of limitations that would otherwise bar a claim. See, e.g., *Celotex Corp. v. Meehan,* 523 So.2d 141 (Fla.1988) (products liability); *Creviston v. General Motors Corp.,* 225 So.2d 331 (Fla.1969) (breach of warranty); *City of Miami v. Brooks,* 70 So.2d 306 (Fla.1954) (negligence); *Senfeld v. Bank of Nova Scotia Trust Co.,* 450 So.2d 1157 (Fla.Dist.Ct.App.1984) (conversion). The Florida courts have ruled that the cause of action is immaterial to the application of the discovery rule. "[R]egardless of the underlying nature of the cause of action, the accrual of the same must coincide with the aggrieved party's discovery or duty to discover the act constituting an invasion of his legal rights." *Creviston,* 225 So.2d at 334.

This general rule has also been applied to indemnity provisions in insurance contracts. See, e.g., *Ideal Mut. Ins. Co. v. Waldrep,* 400 So.2d 782 (Fla.Dist.Ct.App.1981); *Continental Cas. Co. v. Shoffstall,* 198 So.2d 654 (Fla. Dist.Ct.App.1967), *cert. denied,* 204 So.2d 327 (Fla.1967). We face an indemnity provision here. The majority errs in refusing to recognize, without explanation, the authoritative weight of these cases, as if there is something magic about insurance contracts.

Although USX is not an insurance company, it undertook to insure against the risk that Burris might later be held liable for environmental damage caused by the underground storage tanks. There is no logical distinction between what USX did and what insurance companies normally do, and, for purposes of the discovery rule, I cannot perceive any meaningful distinction between in-

demnity provisions in insurance contracts and indemnity provisions in, as the majority characterizes them, "negotiated contracts between two business corporations."

Of the insurance contract cases, *Waldrep* is the most illuminative. In that case, a Florida intermediate appellate court construed an indemnity provision under which the insured sought recovery for loss of his airplane. The insurer denied the claim because the insured had allegedly failed to give timely notice of the loss. The court held that the insured was required to give notice only "when there has been an occurrence that would lead a reasonable and prudent man to believe that a claim for damages would arise." *Waldrep*, 400 So.2d at 783.

The district court put precisely the same question before the jury in this case. The court asked the jury to decide whether Burris had notified USX within sixty days of the first occurrence that would have led Burris to believe, acting as a reasonable and prudent indemnitee, that DERM had made a claim for which USX could be liable; the jury decided that it had.

The *Erie* doctrine requires us, in diversity cases, to apply substantive state law as it has been applied by the state's highest court. *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). If there is no decision by that court which is directly on point, as here, then we must give "proper regard" to relevant rulings of other courts of the state in order to predict how the high court would rule. *Id.* The Supreme Court has held that "an intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a

federal court *unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Id.,* citing *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940).

We have a duty to affirmatively seek out, and not ignore, as I feel the majority has, all relevant information that might enable us to make the correct prediction. In applying that sound practice to this case, we must consider the implications of *Creviston* and the other statute of limitations cases, and give proper regard to the clear holdings of *Waldrep* and cases like it that have been decided by the Florida intermediate appellate courts. Together, these cases provide clues so plain that even Doyle's Dr. Watson could not fail to discern them.

A holding by this court that Florida would apply the discovery rule to the indemnity provision of the sales contract between Burris and USX would neither "change" nor "expand" the common law of Florida, as the majority asserts; it would simply be an accurate assessment of that law as it currently exists.

I respectfully dissent.*

---

\* Although USX was bound to honor the indemnity provision, I am not convinced that Burris was entitled to be reimbursed for the cost of removing the structurally sound tanks as well as the defective ones, or even that tank removal was the most cost-effective response to DERM's concerns. I am also unpersuaded that USX should be liable to Burris for the cost of constructing new storage tanks.

Under Section 5.4 of the Agreement of Sale, USX was to indemnify Burris and hold it harmless from all "claims" connected with ownership of the storage tanks. DERM's insistence that the groundwater contamination be corrected consti-

tuted a claim within the meaning of the agreement. I think that USX was liable to indemnify Burris for the amount necessary to stop the pollution, but I find it hard to believe that Burris's decision to build new tanks was part of DERM's claim.

I would remand this case to the district court to see whether it could recalculate the cost, based upon the existing record, that Burris should have incurred in cleaning up the contamination. If the existing record proved to be inadequate, a new trial would be necessary on the issue of damages.