[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 24-12109

Non-Argument Calendar

————————————————

LYNDA PIERCE,
DAVID PIERCE,

                                    Plaintiffs-Appellants,

*versus*

NATIONAL SPECIALTY INSURANCE COMPANY,

                                    Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cv-01772-PGB-RMN

_____

Before ROSENBAUM, ABUDU, and BLACK, Circuit Judges.

PER CURIAM:

Lynda and David Pierce appeal the district court's grant of summary judgment to National Specialty Insurance Company (NSIC) in their breach of contract action.  The Pierces contend the district court erred in determining (1) NSIC did not waive the claim that notice was untimely; (2) the Pierces did not substantially comply with the notice provision; and (3) NSIC was prejudiced by the notice provided.  After review,[1] we affirm the district court.

## I.  BACKGROUND

NSIC issued an insurance policy to the Pierces covering their Orlando home, effective June 26, 2021 to June 26, 2022.  The Pierces purchased their Orlando home in 2019, and before moving in, they sanded and stained the property's flooring.  On June 19, 2021, David Pierce was conducting demolition work in preparation for a kitchen renovation.  As part of his demolition work, he "went and turned off the valve, turned off the water supply line, and I took my hands on the compression fitting, took the compression fitting from the sink's head off.  And it just exploded.  The whole thing was real brittle on the bottom and that PVC line just burst

_____

[1] We review the district court's grant of summary judgment *de novo*, construing all facts and drawing all reasonable inferences in favor of the non-moving party. *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 919 (11th Cir. 2018).

into several pieces." Pierce ran outside and turned the water supply off to the house. He then came back inside and used towels to dry up the water that flooded into the kitchen, hallway, laundry room, and formal dining room.

The next day, on June 20, 2021, the Pierces continued the kitchen demolition, while the floor continued drying with the use of towels and fans. The Pierces removed the kitchen sink, an electrical outlet, the countertops, the cabinets and the kitchen islands. Because the kitchen sink was relocated during the renovation, the Pierces removed the water supply line to the former location of the kitchen sink and capped the busted pipe.

After the demolition was complete, the Pierces noticed the wood flooring was still damp, and the wood had started cupping. Heffernan Hardwood Flooring, LLC inspected the flooring and Heffernan recommended the Pierces continue using fans to dry out the floor. The Pierces continued to use fans for "[s]everal weeks, if not months." When the Pierces had their new cabinets installed in the last week of July or beginning of August, Heffernan had reported the moisture content in the floor was "near acceptable level." The Pierces believed the moisture in the flooring was gone when they got the kitchen remodeled.

In January 2022, Heffernan refinished the floor with a sanding process. Afterward, the Pierces noticed the floors cupping again and called Heffernan out to inspect. Heffernan removed some floorboards and discovered the sub-flooring was wet. At this point, on January 24, 2022, the Pierces contacted NSIC to report

their loss.  NSIC assigned a field adjuster to "inspect and document the nature and extent of your damages on January 25, 2022."  The field adjuster observed no visible water damage to the kitchen and living room wood flooring, and a moisture test revealed no moisture in the flooring.  However, moisture was found on the subfloor that sits directly on the concrete slab.

American Leak Detection inspected the floor on January 26 and 28, 2022.  It found no active leaks after the two visits, and for this reason NSIC believed the moisture to the subfloor was a result of moisture coming up through the concrete slab foundation.  As moisture and water seeping through the foundation was an exclusion to the Pierces' policy, there was no coverage for the loss.

The Pierces then contacted a public adjuster to inspect the property on February 19, 2022.  The public adjuster believed "the moisture observed to the subfloor in the living room around January 2022 was due to a sudden pipe burst that occurred in June 2021" while the kitchen was being renovated.  The Pierces submitted the public adjuster's inspection to NSIC, along with their Sworn Proof of Loss, which stated the moisture was due to a pipe break and the date of loss was January 24, 2022.  NSIC acknowledged receipt of these documents, but reaffirmed its prior denial of coverage.

On June 27, 2022, the Pierces sued NSIC for breach of contract in state court, pleading the date of loss as January 26, 2022.  NSIC filed its answer and affirmative defenses in state court on July 26, 2022, and did not include prompt notice as an affirmative

defense.  On September 27, 2022, NSIC removed the case to federal court.

On October 30, 2023, NSIC moved to amend its affirmative defenses to add an affirmative defense of prompt notice.  A magistrate judge denied that motion on November 21, 2023, determining NSIC did not establish good cause to amend under Federal Rule of Civil Procedure 16(b)(4).

On October 31, 2023, NSIC moved for summary judgment, asserting, among other things, that the Pierces are not entitled to relief because they failed to provide prompt notice of their claim to NSIC, which is a condition precedent to coverage.  The Pierces responded, contending that NSIC knew about the date of loss prior to the filing of the lawsuit in state court, and that the failure to assert prompt notice as an affirmative defense was a waiver.  On June 12, 2024, the district court granted NSIC's motion for summary judgment based on the prompt notice defense.

## II. DISCUSSION

### A. Waiver

#### 1. Good Cause/Fed. R. Civ. P. 8(c)

The Pierces first contend the district court erred by not applying the magistrate judge's order finding NSIC was precluded from asserting an unpled prompt notice defense because it failed to show good cause for failing to timely seek to amend the pleadings. The magistrate judge's order denying the motion to amend NSIC's affirmative defenses was decided under Federal Rule of Civil

Procedure 16(b)(4).  That rule provides a pretrial "schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The magistrate judge determined that NSIC failed to establish good cause as to why it did not move to amend its affirmative defenses earlier, as the deadline to amend pleadings lapsed on December 20, 2022, and NSIC did not move to amend until November 1, 2023.

However, the district court's allowance of the affirmative defense was pursuant to our caselaw interpreting Federal Rule of Civil Procedure 8(c), which supports a liberal approach to waiver where the failure to raise an affirmative defense has not prejudiced the plaintiff.  *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1321 n.4 (11th Cir. 2006).  "The Supreme Court has held that the purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it."  *Grant v. Preferred Rsch., Inc.*, 885 F.2d 795, 797 (11th Cir. 1989) (citing *Blonder-Tongue Lab'ys, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971)).  "[I]f a plaintiff receives notice of an affirmative defense by some means other than pleadings, 'the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice.'"  *Id.* (quoting *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988)).  "When there is no prejudice, the trial court does not err by hearing evidence on the issue."  *Id.*

The district court did not err in allowing NSIC to assert a prompt notice defense in its motion for summary judgment.  As the Pierces had notice of the prompt notice defense prior to trial

and had the opportunity to respond to the defense, they were not prejudiced by NSIC's earlier omission of the defense from its affirmative defenses. NSIC did not waive its prompt notice defense by failing to include it in its affirmative defenses.

### 2. Denial Letter

The Pierces also contend NSIC waived the prompt notice defense by failing to rely on that reason for denial of coverage in its denial letter. Instead, the claim denial at that point was based on a policy exclusion because moisture and water seeping through the foundation was an exclusion to the Pierces' policy. Florida law provides:

> (2) A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:

> (a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery.

Fla. Stat. § 627.426. The facts of this case show the Pierces claimed the date of loss was January 24, 2022. That is the date they notified NSIC of loss, and that is the date they cited on their Sworn Proof of Loss. While the Public Adjuster for the Pierces stated the moisture discovered in January 2022 was due to a pipe that burst in June 2021, at that point the Pierces were still not claiming June 2021 as their date of loss as their Sworn Proof of Loss cited January 24,

2022, as the date of loss. NSIC cannot be faulted for failing to deny the Pierces' claim for prompt notice when the Pierces were claiming a date seven months later as the date of loss. NSIC did not waive the prompt notice defense by failing to rely on it in the Pierces' denial letter.

## B. *Prompt Notice*

NSIC cites to the following provision in the Pierces' insurance policy:

> C. Duties After Loss
>
> In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:
>
> 1. Give prompt notice to us or our agent. . . .
>
> 8. Send to us, within 60 days after our request, your signed sworn proof of loss which sets forth, to the best of your knowledge and belief:
>
>> a. The time and cause of loss.

The failure to give prompt notice is a "legal basis for the denial of recovery under the policy." *Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782, 785 (Fla. 3d DCA 1981). Under Florida law, the "question of whether an insured's untimely reporting of loss is sufficient to result in the denial of recovery under the policy implicates a two-step analysis." *LoBello v. State Farm Fla. Ins. Co.*, 152 So. 3d 595, 599 (Fla. 2d DCA 2014). The first step is to determine whether the

insured provided timely notice. *Id.* Next, if notice was untimely, prejudice to the insurer is presumed, but that presumption may be rebutted. *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1218 (Fla. 1985).

### 1. Whether the Pierces provided timely notice

"Notice is necessary when there has been an occurrence that should lead a reasonable and prudent man to believe that a claim for damages would arise." *Ideal Mut. Ins.*, 400 So. 2d at 785. Prompt notice is "as soon as practicable and calls for notice to be given with reasonable dispatch and within a reasonable time in view of all the facts and circumstances of each particular case." *LoBello*, 152 So. 3d at 599 (quotation marks and alterations omitted). "[W]hat is a reasonable time depends upon the surrounding circumstances and is ordinarily a question of fact for the jury." *Id.* However, "if the undisputed evidence will not support a finding that the insured gave notice to the insurer as soon as practicable, then a finding that notice was timely given is unsupportable." *Id.*

Florida courts have interpreted "prompt" differently when damage is caused by a known event, such as a hurricane, or when the insured was on-site when readily apparent problems developed. For example, in *1500 Coral Towers Condominium Association, Inc. v. Citizens Property Insurance Corporation*, 112 So. 3d 541 (Fla. 3d DCA 2013), Coral Towers admitted that it had some knowledge of damage to the complex within a month after Hurricane Wilma, and that some repairs were made to the roof; however, no insurance claim was made until five years later on June 29, 2010. Under

these circumstances, the court found there was "no factual dispute that Coral Towers failed to give timely notice of the loss." *Id.* at 543. *See also Hope v. Citizens Prop. Ins. Corp.*, 114 So. 3d 457 (Fla. 3d DCA 2013) (notice not prompt where homeowner made his own repairs to property following Hurricane Wilma and did not file claim until four years later); *Soronson v. State Farm Fla. Ins. Co.*, 96 So. 3d 949 (Fla. 4th DCA 2012) (notice not prompt where homeowner filed claim for damage to roof allegedly caused by Hurricane Wilma over three years after hurricane struck); *Kramer v. State Farm Fla. Ins. Co.*, 95 So. 3d 303 (Fla. 4th DCA 2012) (notice not timely where homeowner alleged roof damage by Hurricanes Frances and Jeanne in 2004 and claim not filed until 2009); *Ideal Mut. Ins.*, 400 So. 2d at 785 (insured knew in November that his aircraft was on ground on remote island, pilot dead in cockpit, and wing damaged by fire, notice not provided until January was untimely).

We agree with the district court that the undisputed facts show the Pierces did not provide prompt notice of their alleged loss to NSIC. It is now undisputed the date of loss was June 19, 2021, and the Pierces reported the loss on January 24, 2022. On June 19, 2021, "a reasonable and prudent man [would have] believe[d] that a claim for damages would arise" from the circumstances." *See Ideal Mut. Ins.*, 400 So. 2d at 785. David Pierce was on site when the pipe burst on June 19, 2021, and the Pierces witnessed the floor's dampness and cupping between the date of loss and when they finally notified NSIC. While the Pierces assert they did not provide notice earlier because they did not know the flood caused actual damage to the subfloor and they were planning to resurface

24-12109                Opinion of the Court                11

the floor as part of the kitchen renovation anyway, the undisputed facts show the policy requires prompt notice and that the Pierces were aware of damage to the floor during the seven-month period between the flood and when they provided notice. An insured is not relieved of its responsibility to provide notice simply because it engages in independent repairs. *See id.* at 786. The district court did not err by finding the Pierces failed to provide prompt notice.

### 2. *Prejudice*

A breach of the duty of notice results in a rebuttable presumption of prejudice to the insurer, and the burden is on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts. *Bankers Ins. Co.*, 475 So. 2d at 1217-18.

As the Pierces breached the duty of notice, NSIC has a rebuttable presumption of prejudice. The Pierces contend that because NSIC's denial of coverage letter revealed its intent to deny the claim on other grounds regardless of the notice, NSIC waived its right to object to coverage on the basis the Pierces failed to provide timely notice. We disagree. First, an insurer who denies a claim based on lack of coverage may nevertheless be prejudiced due to late notice. Second, the Pierces' position would effectively nullify a notice defense any time an insurer raised any other defense to claims. This would result in an insurer not being able to claim late notice as a defense unless it was the sole basis for denying coverage.

Further, although NSIC has the presumption of prejudice, NSIC asserts that the Pierces' repair of the water supply line and ongoing kitchen renovations all occurred prior to the Pierces notifying NSIC of their loss. As the district court found, these intervening repairs and renovation disposed of the evidence NSIC needed to evaluate the Pierces' claim, resulting in NSIC being deprived of the opportunity to adequately investigate and respond to the claim.

The Pierces failed to meet their burden to rebut the presumption of prejudice.

### III.  CONCLUSION

We affirm the district court's grant of summary judgment.

**AFFIRMED.**