[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15683

_____

D.C. Docket No. 9:10-cv-81397-DTKH

THE YACHT CLUB ON THE
INTRACOASTAL CONDOMINIUM
ASSOCIATION, INC.,

                                        Plaintiff - Appellee,

versus

LEXINGTON INSURANCE COMPANY,
JAMES RIVER INSURANCE COMPANY,
foreign corporations,

                                        Defendants - Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 15, 2013)

Before TJOFLAT and MARTIN, Circuit Judges, and BUCKLEW,* District Judge.

BUCKLEW, District Judge:

_____

*Honorable Susan C. Bucklew, Senior United States District Judge for the Middle District of
Florida, sitting by designation.

## I.  Background

This appeal arises out of insurance contracts between Appellee-Plaintiff The Yacht Club on the Intracoastal Condominium Association, Inc. ("The Yacht Club") and Appellant-Defendant Lexington Insurance Company ("Lexington") and Appellant-Defendant James River Insurance Company ("James River"). Lexington provided The Yacht Club with primary property insurance coverage, while James River provided excess coverage.  The Yacht Club contends that its property was damaged by Hurricane Wilma on October 24, 2005, and as a result, it made claims under both insurance policies.

The Yacht Club first notified Lexington of the existence of its claim on May 21, 2010, when its counsel sent a letter of representation to Lexington and requested certain policy information.  On July 27, 2010, The Yacht Club provided Lexington with formal notice of its loss.  On October 1 and 14 of 2010, Lexington requested a proof of loss, examination under oath, and various other documentation pursuant to provisions in the Lexington insurance policy. Specifically, Lexington's insurance policy required, among other things, that: (1) The Yacht Club "[g]ive [Lexington] prompt notice of the loss or damage," and (2) The Yacht Club "[s]end [Lexington] a signed, sworn statement of loss containing the information [Lexington] request[s] to investigate the claim" within 60 days after Lexington's request. [R: Tab 2].  Additionally, Lexington's policy contains

2

the following provision: "No one may bring a legal action against us under this Coverage Part unless . . . [t]here has been full compliance with all of the terms of this Coverage Part." [R: Tab 2].

The Yacht Club filed suit against Lexington on October 12, 2010. The parties do not dispute that The Yacht Club did not provide a sworn proof of loss prior to filing suit, nor do they dispute that The Yacht Club did submit a sworn proof of loss to Lexington on November 29, 2010.  At the time The Yacht Club filed suit, Lexington was still conducting its investigation of The Yacht Club's claim.

James River, meanwhile, first received notice of The Yacht Club's claim on October 8, 2010, and it was added as a party to the lawsuit against Lexington on October 22, 2010.  The James River policy provides that The Yacht Club "shall complete and sign a sworn proof of loss within sixty (60) days after the occurrence of a loss." [R: Tab 2].  Additionally, the James River policy provides that "[n]o one may bring a legal action against us under this Policy unless . . . [t]here has been full compliance with all of the terms of this Policy." [R: Tab 2].  James River was still conducting its investigation into the claim when it was named as a defendant in the underlying lawsuit.  However, The Yacht Club never submitted a sworn proof of loss to James River, and James River never formally denied the Yacht Club's claim.

In the amended complaint, The Yacht Club asserted three claims: (1)

3

declaratory judgment against Lexington,[1] (2) breach of contract against Lexington for failing to pay The Yacht Club's claim, and (3) breach of contract against James River for failing to pay The Yacht Club's claim.  On December 29, 2010, almost two-and-a-half months after The Yacht Club filed suit, Lexington sent a letter to The Yacht Club in which Lexington refused to further consider The Yacht Club's claim, stating:

> It is Lexington's position that the Insured is in breach of the policy by electing to file suit prematurely prior to complying with the [policy's] post lost conditions . . . .  As a result, Lexington hereby rejects The Yacht Club['s] . . . Proof of Loss. . . . [T]he insured has materially prejudiced Lexington's right to investigate the claim prior to suit.

[Dist. Ct. Doc. No. 58-20].

Thereafter, in August of 2011, Lexington and James River filed motions for summary judgment, and the district court held a hearing on the motions on October 12, 2011.  On October 24, 2011, the district court ordered the parties to supplement the record by "demonstrating whether, at the time the complaint was filed, either Lexington or James River had made a specific refusal to pay [The Yacht Club's] claim." [Dist. Ct. Doc. No. 77].  The parties' filings showed that it was undisputed that neither Lexington nor James River made a specific refusal to pay The Yacht Club's claim *prior to* The Yacht Club filing suit.

On November 2, 2011, the district court concluded that the claims at issue were not ripe for adjudication.  With respect to the breach of contract claims, the

---

[1]The Yacht Club sought a declaratory judgment that the Lexington policy is valid and enforceable, that The Yacht Club had a valid and enforceable right to property coverage for the hurricane damage, and that certain provisions in the insurance policy were void and unenforceable.

district court pointed out that under Florida law, a specific refusal to pay an insurance claim is the breach that triggers the cause of action. The district court found that neither insurance company had denied The Yacht Club's claim and concluded that the breach of contract claims were not ripe for adjudication. With respect to the claim for a declaratory judgment against Lexington, the district court concluded that "prudential considerations of judicial efficiency" counseled against finding that the claim was ripe and that the court did not perceive any hardship to the parties that would result from that conclusion. [R: Tab 4].

Because the district court concluded that the breach of contract claims at issue were not ripe for adjudication, the court dismissed the case without prejudice for lack of subject matter jurisdiction and did not rule on the pending motions for summary judgment. Thereafter, Lexington and James River filed the instant appeal, in which they argue that the district court erred in dismissing the case for lack of subject matter jurisdiction. Instead, they argue that the district court should have granted their summary judgment motions and dismissed the case with prejudice.

## II.  Standard of Review

This Court reviews the district court's dismissal without prejudice for lack of subject matter jurisdiction due to ripeness concerns under the *de novo* standard of review. See Elend v. Basham, 471 F.3d 1199, 1204 (11th Cir. 2006)(citations omitted).

## III.  Ripeness

5

If a case is not ripe for adjudication, the court will lack subject matter jurisdiction over the case. See id. This Court has described the ripeness doctrine as follows:

> The ripeness doctrine involves consideration of both jurisdictional and prudential concerns. Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review. Even when the constitutional minimum has been met, however, prudential considerations may still counsel judicial restraint.
>
> The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes. The doctrine seeks to avoid entangling courts in the hazards of premature adjudication. The ripeness inquiry requires a determination of (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration. Courts must resolve whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court.

Digital Properties, Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir. 1997)(internal citations and quotation marks omitted).

Appellants argue that the district court erred in concluding that the case was not ripe for adjudication. With respect to The Yacht Club's claims against Lexington, this Court finds that such claims were ripe.

At the time that the lawsuit was filed, Lexington had not yet denied The Yacht Club's claim. While some Florida courts have stated that a breach of insurance contract claim accrues when the insurance company denies the claim,

6

see Allstate Ins. Co. v. Kaklamanos, 843 So. 2d 885, 892 (Fla. 2003); Palma Vista Condominium Ass'n of Hillsborough County, Inc. v. Nationwide Mut. Fire Ins. Co., Inc., No. 8:09-CV-155-T-27EAJ, 2010 WL 4274747, at *6 (M.D. Fla. Oct. 7, 2010), Appellants argue that an insurance company's denial of the claim is not a prerequisite to suit.  In support of their argument, Appellants cite several cases in which the courts ruled on the breach of contract claims despite the fact that the insurance company did not deny the insurance claim prior to the filing of the lawsuit.  See Swaebe v. Federal Ins. Co., 374 Fed. Appx. 855 (11th Cir. 2010); Starling v. Allstate Ins. Co., 956 So. 2d 511 (5th DCA 2007); Goldman v. State Farm Fire General Ins. Co., 660 So. 2d 300 (Fla. 4th DCA 1995); Ro-Ro Enterprises, Inc. v. State Farm Fire & Cas. Co., 1994 WL 16782171 (S.D. Fla. June 22, 1994).  The weakness in Appellants' argument, however, is that in these cases, either the insurance company denied the insurance claim after the lawsuit was filed (Swaebe and Starling) or the court did not address the issue of the insurance company's failure to deny the insurance claim (Goldman and Ro-Ro).

This Court is not persuaded by Appellants' argument that the breach of contract claims in the instant case were ripe at the time the lawsuit was filed, given that neither insurance company had denied the insurance claims at that time.  However, this conclusion does not end the Court's inquiry, because ripeness can be affected by events occurring after the case is filed.  See Blanchette v. Connecticut General Ins. Corps., 419 U.S. 102, 140 (1974)(stating that "ripeness is peculiarly a question of timing[;] it is the situation now rather than the situation at

7

the time of the District Court's decision that must govern"); Henley v. Herring, 779 F.2d 1553, 1555 (11th Cir. 1986)(considering events subsequent to the filing of the complaint, stating that ripeness is a question of timing, and concluding that the case was ripe when the district court ruled); Principal Life Ins. Co. v. Alvarez, No. 11-21956-CIV, 2011 WL 4102327, at *4 (S.D. Fla. Sept. 14, 2011)(stating that even if the case was not ripe when it was filed, the case was ripe on the date that the district court ruled); World Holdings, LLC v. Federal Republic of Germany, 794 F. Supp.2d 1341, 1345 n.7 (S.D. Fla. 2011), aff'd, 701 F.3d 641 (11th Cir. 2012).

By December 29, 2010, Lexington had made it clear that it would not further consider The Yacht Club's claim, and as such, Lexington denied the claim at that time.[2]  Thus, by the time that the district court issued its ruling on November 2, 2011 dismissing the case, The Yacht Club's breach of contract claim (as well as its declaratory judgment claim) against Lexington were ripe for review. See Swaebe, 374 Fed. App'x at 857-58 (insurance company denied insurance claim after lawsuit was filed, and the lower court ruled on the summary judgment motion); Starling, 956 So. 2d at 512-14 (same).  Accordingly, the district court erred in concluding that these claims were not ripe and dismissing the case.[3]

---

[2]The Court notes that the Yacht Club has acknowledged that Lexington's December 29, 2010 letter was a denial of its claim. [Dist. Ct. Doc. No. 85].

[3]Lexington asks us to decide whether it is entitled to summary judgment based on its contention that The Yacht Club filed suit prior to complying with all conditions precedent to bringing suit, but we decline to do so.  Instead, we remand the case to the district court to decide this issue.

While the district court erred with respect to The Yacht Club's claims against Lexington, the district court did not err with respect to The Yacht Club's breach of contract claim against James River. It is undisputed that The Yacht Club never submitted a sworn proof of loss to James River and that James River has not formally notified The Yacht Club that it has denied the claim.[4] Given that James River has not formally denied the Yacht Club's claim, a breach of contract claim against James River is premature. Accordingly, the district court did not err in concluding that The Yacht Club's breach of contract claim against James River was not ripe and was due to be dismissed without prejudice.

## IV.  Conclusion

Accordingly, the decision of the district court is **AFFIRMED IN PART AND REVERSED AND REMANDED IN PART**: The decision is affirmed as to the dismissal without prejudice of the breach of contract claim against James River. The decision is reversed as to the dismissal of the breach of contract and declaratory judgment claims against Lexington. On remand, the district court is directed to rule on the merits of Lexington's motion for summary judgment.

---

[4]Furthermore, James River, as the excess insurer, could not be required to pay the claim unless and until Lexington paid its $5,000,000 policy limits. The James River policy provides the following: "[James River] will pay for direct physical loss or damage to Covered Property caused by or resulting from any Covered Cause of Loss in excess of coverage provided by the primary . . . policy[] . . . . This Policy shall follow the terms, definitions, conditions and exclusions of [the] primary policy . . . . This Policy will apply only after the primary and underlying insurer(s) have paid the full amount of their respective 'ultimate net loss' liability . . . ." [R: Tab 2].