[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

Nos. 13-12486, 13-15581 and 13-15842

————————————————

D.C. Docket Nos. 9:10-cv-81397-DTKH, 9:10-cv-81397-DTKH, and
9:12-cv-81275-DTKH

THE YACHT CLUB ON THE
INTRACOASTAL CONDOMINIUM
ASSOCIATION, INC.,

                                        Plaintiff-Appellant-Cross-Appellee,

versus

LEXINGTON INSURANCE
COMPANY,

                                        Defendant-Appellee-Cross-Appellant.

————————————————

Appeals from the United States District Court
for the Southern District of Florida

————————————————

(January 8, 2015)

Before WILLIAM PRYOR and JORDAN, Circuit Judges, and JONES,[*] District
Judge.

--------

[*] Honorable Steve C. Jones, United States District Judge for the Northern District of Georgia,
sitting by designation.

JONES, District Judge:

On October 24, 2005, Hurricane Wilma struck the Florida coast. Some property owners immediately made claims with their insurance carriers. Others waited months or even years before filing claims. The Yacht Club fell into the latter group. As a result, these appeals require us to address issues of prompt notice and the rebuttable presumption of prejudice to the insurer under Florida law. The Yacht Club also asks us to reverse the decision of the district court to award attorney's fees to Lexington Insurance Company pursuant to Florida statute § 768.79.

I.

The following facts are undisputed. Appellant-Cross-Appellee-Plaintiff, The Yacht Club on the Intracoastal Condominium Association ("The Yacht Club"), is a condominium association with 380 residential units contained in sixteen buildings, as well as an office/clubhouse building, garages, and maintenance facilities. [R112:1-2] At the relevant time period, The Yacht Club held an insurance policy with Appellee-Cross-Appellant-Defendant Lexington Insurance Company ("Lexington").[1] The Yacht Club contends that its property was damaged by Hurricane Wilma and filed a claim under its Lexington insurance policy.

---

[1] Although James River Insurance Company provided excess insurance coverage for The Yacht Club during this time period, it is no longer part of this litigation.

2

The Yacht Club Board ("the Board") representative James Capodanno testified that "while the Board was aware that some obvious damage occurred to the buildings during and immediately after Hurricane Wilma, it was our understanding that the cost to repair the damages that we observed would not exceed the policy's deductible of a minimum of at least $100,000." [R58:Ex. 22, ¶ 5]  In March 2006, the Board imposed a $150,000 special assessment on residents to pay for Hurricane Wilma damage. [R63:72]

Mr. Capodanno also testified that in the years after Hurricane Wilma, residents had "growing concerns" about "the worsening condition of roof tiles for the buildings, garages and carports; distress to exterior portions of the buildings including stucco around window sills; the need for continual repairs to the roofs of the buildings; increasing interior leaks; troublesome and malfunctioning windows and sliding glass doors; cracks on, around and in between the interior and exterior of windows along with sliding glass doors for individual units; numerous cracks on drywall; and persistent irritating wind noise and drafts coming through the windows and sliding glass doors of the various units." [R112:2; R58:Ex. 22, ¶ 7]

In late 2006, The Yacht Club hired Criterium Engineering to inspect the property because the Board was considering suing its developer, Tarragon Corporation, for certain alleged construction and design deficiencies, including issues with the facilities' roofs.  [R112:8; R63:19-24, 120-158, 164] The Criterium

3

report indicated damage to the roofs caused by Hurricane Wilma.  [*Id.*] Based on the report, the Board in fact did sue Tarragon in 2008, but the developer went into bankruptcy. [*Id.*]  The Yacht Club then hired contractors to perform significant repairs on the roofs.  [*Id.*]

Mr. Capodanno testified the Board retained a public adjuster in 2009 and the Board was "informed in the later part of 2009 for the first time that, even though a full investigation had not been finished there was significant damage attributable to Hurricane Wilma for which a claim should be made under the Lexington Insurance Policy." [R112:2; R58:Ex. 22, ¶ 8]

On July 27, 2010, four years and seven months after Hurricane Wilma, counsel for The Yacht Club sent formal notice of its loss to Lexington.  [R112:2] The Yacht Club filed suit on October 12, 2010, ultimately seeking $6,208,910 in damages, although recognizing that the Lexington policy limits were $5,000,000.

Under the terms of the policy, the insured is required to give "prompt notice of the loss or damage."  [R1:Ex. B, at 47-48] The insured is also required to send "a signed, sworn statement of loss containing the information we request to investigate the claim" "within sixty (60) days after" Lexington's request.  [*Id.*] Finally, the policy provides: "No one may bring a legal action against us under this Coverage Part unless . . . [t]here has been full compliance with all of the terms of this Coverage Part." [*Id.*]

4

This is not the first time we have considered this dispute. In 2011, the district court dismissed The Yacht Club's suit as unripe finding that Lexington had not yet denied the claim. [R91] A prior panel of this court determined that while the suit was not ripe at the time it was filed, subsequent events – Lexington's denial of The Yacht Club's claim – made The Yacht Club's breach of contract claim ripe for review. We remanded the case to the district court. *See The Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 509 F. App'x 919 (11th Cir. 2013).

On remand, the district court granted Lexington's motion for summary judgment, a decision which is at the heart of these appeals.[2] The district court found that submission of a sworn proof of loss was not a condition precedent to filing suit under the Lexington policy. [R112:4-5] The district court also found that The Yacht Club's notice was not "prompt" as a matter of law. [*Id.* at 6-9] Finally,

---

[2]On November 26, 2012, while the first order of the district court was on appeal, The Yacht Club filed a second suit against Lexington also asserting a breach of contract and declaratory judgment action for damage caused by Hurricane Wilma. The Yacht Club's purpose in filing this second suit was to allege facts to show that The Yacht Club continued to comply with its post-loss duties under the insurance policy even after the district court dismissed its first suit as unripe. The district court granted Lexington's motion to dismiss this second suit without prejudice on the basis of *res judicata*. [R39, Appeal No. 13-15842]

The Yacht Club's appeal from the district court's order granting Lexington's motion for summary judgment, Appeal No. 13-12486/Cross Appeal No. 13-12690, has been consolidated with The Yacht Club's appeal from the district court's order awarding attorney's fees, Appeal No. 13-15581, and The Yacht Club's appeal from the district court's order dismissing without prejudice The Yacht Club's second suit on the basis of *res judicata*, Appeal No. 13-15842.

5

the district court concluded that The Yacht Club had not rebutted the presumption of prejudice arising out of its late notice. [*Id.* at 9-12]

II.

The Yacht Club argues that the district court improperly granted Lexington's motion for summary judgment because there are questions of fact as to whether The Yacht Club provided prompt notice and whether it rebutted the presumption of prejudice accorded to the insurer under Florida law when an insured fails to provide prompt notice.

We review the grant or denial of a motion for summary judgment *de novo*. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014). "In so doing, we draw all inferences and review all evidence in the light most favorable to the non-moving party." *Id.* As jurisdiction is premised on diversity, we apply the substantive law of the forum state, Florida, unless federal constitutional or statutory law would compel a different result. *Admiral Ins. Co. v. Feit Mgmt. Co.*, 321 F.3d 1326, 1328 (11th Cir. 2003).

A.

The failure to give timely notice is a "legal basis for the denial of recovery under the policy." *Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782, 785 (Fla. 3d DCA 1981). Under Florida law, the "question of whether an insured's untimely reporting of loss is sufficient to result in the denial of recovery under the policy

6

implicates a two-step analysis." *LoBello v. State Farm Fla. Ins. Co.*, ____ So. 3d ____, No. 2D13-300, 2014 WL 2751037 (Fla. 2d DCA June 18, 2014). The first step is to determine whether the insured provided timely notice. *Id.* Next, if notice was untimely, prejudice to the insurer is presumed, but that presumption may be rebutted. *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1218 (Fla. 1985).

The insurance policy here required The Yacht Club to give "prompt notice of the loss or damage." The Yacht Club's contention that its notice was prompt because it was within the five year limitation period set forth in the policy is inapposite. The limitation period in the policy does not define the contours of "prompt" notice. Rather, under Florida law, "prompt," "as soon as practicable," "immediate," or comparable phrases have been interpreted to mean that notice should be given "with reasonable dispatch and within a reasonable time in view of all of the facts and circumstances of the particular case." *State Farm Mut. Auto. Ins. Co. v. Ranson*, 121 So. 2d 175, 181 (Fla. 2d DCA 1960), *overruled in part on other grounds, Am. Fire & Cas. Co. v. Collura*, 163 So. 2d 784, 793-94 (Fla. 2d DCA 1964); *see also LoBello*, ___ So. 3d at ___, 2014 WL 2751037, at *4. "Notice is necessary when there has been an occurrence that should lead a reasonable and prudent man to believe that a claim for damages would arise." *Waldrep*, 400 So. 2d at 785. "While the question as to what is a reasonable time, depending as it does upon the surrounding circumstances, is ordinarily for decision

7

by the trier of facts, yet when facts are undisputed and different inferences cannot reasonably be drawn therefrom, the question is for the court." *Ranson*, 121 So. 2d at 182.

To be clear, there is no "bright-line" rule under Florida law setting forth a particular period of time beyond which notice cannot be considered "prompt." *See*, *e.g.*, *Kings Bay Condo. Ass'n, Inc. v. Citizens Prop. Ins. Corp.*, 102 So. 3d 732 (Fla. 4th DCA 2012). Rather, as would be expected given a standard that depends on facts and circumstances, Florida courts have found that notice several years after an occurrence is "prompt" in some cases, but not others. In *LoBello*, for example, new homeowners moved into property in 2002 and noticed cracking in 2004, but they attributed the problem to normal settling of the home. It was not until four years later when a friend recommended the homeowners consult with a public adjuster that they learned the cracking was caused by a sinkhole and filed a claim with their insurer. The court found that whether notice was "prompt" under these circumstances was a question for the jury. *See* ____ So. 3d at ____, 2014 WL 2751037, at *7.

On the other hand, Florida courts have interpreted "prompt" differently when damage is caused by a known event, such as a hurricane, or when the insured was on-site when readily apparent problems developed. For example, in *1500 Coral Towers Condominium Association, Inc. v. Citizens Property Insurance*

8

*Corporation*, 112 So. 3d 541 (Fla. 3d DCA 2013), Coral Towers admitted that it had some knowledge of damage to the complex within a month after Hurricane Wilma, and that some repairs were made to the roof;  however, no insurance claim was made until five years later on June 29, 2010.  Under these circumstances, the court found there was "no factual dispute that Coral Towers failed to give timely notice of the loss."  *Id.* at 543.  *See also Nat'l Trust Ins. Co. v. Graham Bros. Constr. Co.*, 916 F. Supp. 2d 1244 (M.D. Fla. 2013) (four year delay untimely where insured's representative was present on construction site when buried stumps, roots, and clay were discovered); *Kendall Lakes Towers Condo. Ass'n v. Pac. Ins. Co.*, No. 10-24310-CIV, 2012 WL 266438 (S.D. Fla. Jan. 30, 2012) (notice not prompt when given four years after Hurricane Wilma and insured waited to see whether damages exceeded deductible); *Hope v. Citizens Prop. Ins. Corp.*, 114 So. 3d 457 (Fla. 3d DCA 2013) (notice not prompt where homeowner made his own repairs to property following Hurricane Wilma and did not file claim until four years later); *Soronson v. State Farm Fla. Ins. Co.*, 96 So. 3d 949 (Fla. 4th DCA 2012) (notice not prompt where homeowner filed claim for damage to roof allegedly caused by Hurricane Wilma over three years after hurricane struck); *Kramer v. State Farm Fla. Ins. Co.*, 95 So. 3d 303 (Fla. 4th DCA 2012) (notice not timely where homeowner alleged roof damage by Hurricanes Frances and Jeanne in 2004 and claim not filed until 2009); *Waldrep*, 400 So. 2d at 785 (insured knew

9

in November that his aircraft was on ground on remote island, pilot dead in cockpit, and wing damaged by fire, notice not provided until January was untimely). *But cf. Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1333 (S.D. Fla. 2009) (question of fact where insured initially reported some damage from Hurricane Wilma and insured's request that insurer do complete investigation allegedly went unheeded).

We find as a matter of law that The Yacht Club's notice to Lexington was untimely. Mr. Capodanno clearly testified that immediately after the fact, the Board knew the structures had sustained damage from Hurricane Wilma. The Board even set aside a $150,000 special assessment to address this damage. These facts alone are sufficient to "lead a reasonable and prudent man to believe that a claim for damages would arise." *Waldrep*, 400 So. 2d at 785.

Whatever concerns the Board had about the extent of damage and its deductible are not relevant under Florida law. Prompt notice is not excused because an insured might not be aware of the full extent of damage or that damage would exceed the deductible. *See 1500 Coral Towers*, 112 So. 3d at 544 (where insured knew in December 2005 that estimate to repair damages was $259,269.20, delay in notice not excused by question of whether damages would exceed policy deductible); *Waldrep*, 400 So. 2d at 785 ("the insured could not wait until the full

10

extent of the damage to the aircraft was apparent, because the policy covered any 'occurrence' resulting in injury to the aircraft").

Moreover, in 2006, the Board hired Criterium Engineering to determine whether the Board should sue the developer of The Yacht Club. Criterium investigated the roof extensively during this process providing additional information to the Board about damage to the roof. Finally, Mr. Capodanno testified that by late 2009, new consultants informed the Board that The Yacht Club had sustained significant damage in Hurricane Wilma, yet formal notice of a claim still was not made until July 2010. The Yacht Club's contention that it did not have knowledge of the extent of damage caused by Hurricane Wilma until July 2010 is unavailing in light of the undisputed facts of this case. We agree with the district court that there is no dispute of fact that The Yacht Club failed to give timely notice of its loss.

The Florida Supreme Court has explained that this breach of the duty of notice (as opposed to the duty of cooperation) results in a rebuttable presumption of prejudice to the insurer. *See Macias*, 475 So. 2d at 1218. The burden is "on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts." *Id.* Even if it provided late notice, the Yacht Club avers there is a material dispute of fact as to whether it has rebutted the presumption of prejudice. The Yacht Club criticizes Lexington for failing to place

11

any evidence in the record to show that it was prejudiced by the late notice. Such a requirement, however, would flip the burden from the insured to the insurer, which is contrary to Florida law.

The only information The Yacht Club proffers to rebut the presumption of prejudice is that both parties' experts gave opinions, albeit varying, as to causation. This is not enough, however, to create a genuine issue of material fact. Florida law recognizes that an "insurer is prejudiced by untimely notice when the underlying purpose of the notice requirement is frustrated by late notice." *1500 Coral Towers*, 112 So. 3d at 544. The purpose of a provision for notice and proof of loss goes beyond mere causation and is "to enable the insurer to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition upon it." *Laster v. U.S. Fid. & Guar. Co.*, 293 So. 2d 83, 86 (Fla. 3d DCA 1974) (quotation omitted).

The ability to offer testimony as to causation alone does not satisfy the purpose of prompt notice and therefore cannot vitiate the prejudice suffered by Lexington due to delayed investigation and mitigation. Here, even The Yacht Club's own expert acknowledged that the structure sustained additional damage because repairs were not made immediately after Hurricane Wilma. *See* Decl. of Anurag Jain, ¶ 11 [R58:Ex. 23] ("un-repaired damage to the structures, exteriors, doors, windows and roofing would make the building more susceptible to further

damage from future rain and wind storm events"). This is evidence of the prejudicial effect of the passage of time. *See Soronson*, 96 So. 3d at 952–53 (affidavits of insured that roof damaged by Hurricane Wilma not sufficient to overcome presumption of prejudice); *Kramer*, 95 So. 3d 303 (presumption of prejudice not rebutted by structural engineer who testified that passage of time did not undermine his ability to determine cause but also testified that extent of damage immediately after Hurricanes Frances and Jeanne might not be possible to discern).

Moreover, The Yacht Club undertook certain repairs before filing a claim with Lexington. Lexington was prejudiced by not being able to investigate prior to those repairs and by not participating in the repair of those damages. *See PDQ Coolidge Formad, LLC v. Landmark Am. Ins. Co.*, 566 F. App'x 845, 849–50 (11th Cir. 2014) (testimony as to causation insufficient to rebut presumption where no evidence concerning "(a) whether better conclusions could have been drawn without the delay, (b) whether those conclusions could have been drawn more easily, or (c) whether the repairs to the affected areas that took place in the interim would complicate an evaluation of the extent of the damage or [the insured's] efforts to mitigate its damages" and insured provided no evidence to "indicate that the condition of the Property was in the same condition as it was right after the storm"). *But cf. Kendall Lakes*, 2012 WL 266438, at *6 (question of fact on

13

rebuttable presumption where insurer's expert testified that cracks in structure would not have been visible immediately after hurricane and jury could conclude that investigation immediately after hurricane would not have made difference in insurer's investigation); *Stark v. State Farm Fla. Ins. Co.*, 95 So. 3d 285, 288 (Fla. 4th DCA 2012) (question of fact on rebuttable presumption where insurer's investigator told public adjuster that there appeared to be storm damage).

The Yacht Club protests that the application of the standard in such a manner means that for all practical purposes the insured can never rebut the presumption of prejudice. We disagree. Florida courts have offered various ways by which an insured can rebut the presumption. For example, if "an investigation conducted immediately following the occurrence would not have disclosed anything materially different from that disclosed by the delayed investigation," an insured may rebut the presumption. *See Niesz v. Albright*, 217 So. 2d 606, 608 (Fla. 4th DCA 1969); *see also Tiedtke v. Fid. & Cas. Co. of New York*, 222 So. 2d 206, 209 (Fla. 1969) (no prejudice where insurer did not begin investigation until several months after receiving notice and was able to get statement from every material witness prior to trial).

Finally, The Yacht Club argues that an insurer cannot be prejudiced by late notice if it would have denied the claim even had notice been timely. We do not find evidence in the record that Lexington ever denied The Yacht Club's claim on

14

substantive grounds.  Rather, the only denial in the record is made on the basis of

late notice and failure to provide timely proof of loss.  In any event, we recently

rejected this very argument in *Gemini II Ltd v. Mesa Underwriters Specialty Ins.

Co.*, ___ F. App'x ___, 2014 WL 6465994, at *4 (11th Cir. Nov. 19, 2014) (per

curiam) (rejecting insured's argument that "an insurer cannot be prejudiced by late

notice if it would have denied the claim even if notice had been timely"); *see also*

*Laster*, 293 So. 2d at 86–87 (where "prompt reporting" of accident to insurer "may

have enabled insurer to better investigate and assess its rights and liabilities in this

case," insured cannot rebut presumption by pointing to testimony concerning

reason for denial of claim).

Several consequences flow from our decision to affirm the district court's

order that The Yacht Club did not provide prompt notice to its insurer and did not

rebut the presumption of prejudice.  We need not consider Lexington's cross-

appeal of the district court's conclusion that The Yacht Club did not breach the

terms of the insurance contract by filing suit against Lexington before submitting a

sworn proof of loss to the insurance company.[3]  Further, we need not consider

---

[3] In fact, as we indicated at oral argument, it is not appropriate to cross-appeal an alternative
ruling of the district court.  *See Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d
1331, 1343 (11th Cir. 2009) (a party "does not have standing to cross-appeal a summary
judgment in its favor even though the district court rejected arguments of [the party] about
alternative grounds for that summary judgment" . . . "In its defense of a summary judgment, an
appellee is entitled to raise alternative arguments that were rejected by the district court, because
we may affirm on any ground supported by the record, . . . but an appellee is not entitled to
cross-appeal a judgment in his favor.").

whether the district court was correct in its decision to terminate The Yacht Club's second lawsuit on the basis of *res judicata*. Any additional post-loss proof of claim actions undertaken by The Yacht Club are not relevant in light of its failure to provide prompt notice.

B.

After the district court granted Lexington's motion for summary judgment, Lexington moved for attorney's fees pursuant to Florida statute § 768.79 on the basis of Lexington's September 2, 2011, $150,000 offer of judgment to The Yacht Club. Over The Yacht Club's objection, the district court adopted the Report and Recommendation of the Magistrate Judge and awarded Lexington its fees. The Yacht Club appeals only the decision to award fees itself and not the amount of those fees. We review *de novo* issues of statutory construction. *See Rodriquez v. J.D. Lamar*, 60 F.3d 745, 747 (11th Cir. 1995).

Florida's offer of judgment statute § 768.79 provides that a prevailing party may recover litigation expenses from a party that rejects a reasonable offer. We have previously held that this statute is substantive and therefore is applied in diversity cases based on state law claims. *See Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1258 (11th Cir. 2011).

Section 768.79 provides:

(1) ***In any civil action for damages*** filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the

16

> plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by her or him or on the defendant's behalf . . . from the date of filing of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer, and the court shall set off such costs and attorney's fees against the award.

§ 768.79 (2011) (emphasis added).

In *Diamond Aircraft Industries, Inc. v. Horowitch*, 107 So. 3d 362 (Fla. 2013), the Florida Supreme Court reviewed the circumstances under which attorney's fees can be awarded under § 768.79.  The court cited with approval those cases which applied § 768.79 to civil actions where a plaintiff sought only damages, *i.e.* monetary relief.  *Id.* at 373.  Of particular relevance, the court referenced two cases which were in part filed as declaratory judgment actions: *Nelson v. Marine Group of Palm Beach, Inc.*, 677 So. 2d 998, 999 (Fla. 4th DCA 1996) and *DiPompeo Construction Corp. v. Kimmel & Associates*, 916 So. 2d 17, 17-18 (Fla. 4th DCA 2005).  Even though these cases were declaratory in form, the court found that the only question involved was a dispute over money and therefore, they were properly characterized as actions seeking only damages.  *Id.* at 373.

It is clear that under *Diamond Aircraft*, we must reject The Yacht Club's argument that attorney's fees under § 768.79 are not available in any case in which a declaratory judgment accompanies a claim for damages. While the Florida Supreme Court found that cases seeking both monetary and non-monetary relief

17

are not eligible for attorney's fees under § 768.79, by citation to *Nelson* and *DiPompeo Construction*, it reiterated that a court should look behind the procedural vehicle used in a complaint to discern what true relief is sought.

In its complaint, The Yacht Club asserted both a declaratory judgment action and a breach of contract claim against Lexington. The Yacht Club sought a declaration that the Lexington policy was valid and enforceable, that The Yacht Club had a valid and enforceable right to property coverage for the hurricane damage, that certain provisions in the insurance policy were void and unenforceable, and that The Yacht Club had a right to coverage under the policy for its Hurricane Wilma damages. As in *DiPompeo Construction*, if The Yacht Club were to succeed on its declaratory judgment action, it would result in an award of damages, just as in its breach of contract claim. Despite the procedural vehicle used in the case, the only dispute in the suit was one for damages and we conclude that the district court did not err in awarding attorney's fees under § 768.79.

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment and attorney's fees in favor of Lexington.

**AFFIRMED.**

18