# Third District Court of Appeal

## State of Florida

Opinion filed May 20, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D13-1115, 3D14-34
Lower Tribunal No. 09-77085

_____

**Edie Laquer,**
Appellant,

vs.

**Citizens Property Insurance Corporation,**
Appellee.


Appeals from the Circuit Court for Miami-Dade County, Marc Schumacher, Judge.

Law Offices of Paul Morris, P.A., and Paul Morris, for appellant.

Franklin Legal Group, P.A., and Jonathan Franklin, for appellee.


Before SALTER, FERNANDEZ, and LOGUE, JJ.

LOGUE, J.

Edie Laquer appeals a final judgment entered in favor of Citizens Property Insurance Corporation following a jury trial. Prior to trial, the court entered a partial summary judgment, agreeing with Citizens that the insurance claim notice was not "prompt" as a matter of law. The case went to trial on the issue of whether Citizens was prejudiced by the untimely notice. The jury concluded Citizens was prejudiced. Laquer contends the trial court erred in entering partial summary judgment on the issue of whether she provided "prompt" notice of her claim because it was a jury question. Given the insurance policy language at issue and the facts in the summary judgment record, we agree.

FACTS AND PROCEDURAL HISTORY

Laquer, the owner of a condominium unit, purchased an insurance policy from Citizens that insured personal property from damage by a hurricane or other weather conditions. The policy required "prompt notice" of any claim: "In case of a loss to covered property, you must . . . [g]ive prompt notice to us, or your producer, who is to give immediate notice to us." It also required Laquer to submit a sworn proof of loss within sixty days of Citizens' request: "Send to us, within sixty (60) days after our request, your signed, sworn proof of loss . . . ."

On October 24, 2005, Hurricane Wilma struck South Florida. Over three years later, on May 19, 2009, Laquer notified Citizens of mold growth on her furniture, fixtures, carpets, linens, and draperies. She also submitted a sworn proof

2

of loss within sixty days of Citizens' request. Citizens denied the claim for failure to comply with the policy's requirement to provide "prompt" notice. Laquer brought this suit for breach of the policy. After discovery was taken, Citizens moved for summary judgment.

Citizens argued that a delay of more than three years in reporting an insurance claim is not "prompt" notice as a matter of law, relying on case law holding that notice of hurricane damage submitted several years after the storm constituted late notice. Laquer responded to Citizens' summary judgment motion by arguing that the issue of whether the notice was "prompt" turns on when the insured first knew or should have known she had suffered damage, which presents an issue of fact. In support of her position, she filed her affidavit, the deposition of the condominium's manager who inspected her condominium unit after Hurricane Wilma, and the affidavit of an environmental contractor who repaired damage to Laquer's unit. Laquer contended she had no way of learning about the damage for three years until shortly before she filed her claim.

The facts, for purposes of the summary judgment motion on the issue of notice, are established by reviewing the affidavits and depositions in the light most favorable to Laquer, as the non-moving party. Laquer rented her condominium unit fully furnished to a tenant for a period extending approximately three years before the hurricane to three years after the hurricane. She protected her unit from

3

hurricane damage using hurricane shutters, which were installed by the condominium's manager prior to Hurricane Wilma. Her neighbor, who was not in his unit at the time of Hurricane Wilma, did not protect his unit in a similar manner.

After Hurricane Wilma struck South Florida in October 2005, the condominium's manager visited the neighbor's unit and found flooding that apparently resulted from "blown out" sliding glass doors. The flooding was severe enough to require the use of water vacuum equipment to clean up the unit and prevent any further damage. The manager also visited Laquer's unit and found no damage.

Laquer relied on the condominium manager, the housekeeper who attended to the tenant's maintenance requests, and others to advise her of damage to her unit. Some of these individuals visited the unit on a monthly basis after Hurricane Wilma. For example, the manager or another agent of the condominium association would visit Laquer's unit to exterminate pests. They were known to be conscientious agents who would notice and "react" to any noticeable damage. At no time did they observe any water damage to the walls or floors of her unit. The tenant did not report damage, although the record is silent on whether he observed any damage.

In September 2008, one month after the tenant moved out, Laquer visited the unit to prepare it for the next tenant. It was her first visit since before Hurricane Wilma. For the first time, she discovered that wood flooring in the dining room had warped due to water damage. She could not determine the source of the water that warped the floors.

In April 2009, Laquer hired an environmental contractor to perform mold remediation. The contractor soon discovered severe mold growth between a floor-to-ceiling mirror and the mirror's supporting wall. During the course of removing moldy drywall between the wall separating Laquer's unit from her neighbor's, the contractor further observed that the water stains on the interior of the wall were higher on the neighbor's side than on Laquer's. The contractor also noticed metal within the wall exhibiting rust. Based on his knowledge and experience, the contractor concluded that (a) "Laquer's unit was damaged after wind-driven rain entered [the adjacent unit]" and (b) "such wind-driven rain protruded into Laquer's unit from [the adjacent unit], through the demising wall, causing the aforementioned loss and damage to Laquer's personal property located inside Laquer's unit as is evident, for example, from the higher watermark on the unit adjacent to Laquer's unit." The contractor advised Laquer to remove all of her condominium's furnishings and place them in storage. Laquer complied.

Following the contractor's inspection, in May 2009, Laquer contacted the condominium manager to determine why water had seeped into her condominium and whether the condominium building had any prior issues. The manager responded, and Laquer learned for the first time, that Hurricane Wilma was likely the cause of the water seepage. Laquer reported the furniture damage to Citizens immediately thereafter, on May 19, 2009.[1]

After reviewing the summary judgment record, the trial court entered a partial summary judgment. It concluded, as a matter of law, that Laquer failed to provide "prompt" notice of her insurance claim. But the court also ruled that there were material facts in dispute over whether Citizens was prejudiced by the late notice. The case went to trial on that issue. The jury returned a verdict in favor of Citizens, and the trial court entered final judgment for Citizens. This appeal followed.

ANALYSIS

The purpose of a notice provision in an insurance policy is to allow an insurer "to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition upon it." LoBello v. State Farm Florida Ins. Co., 152 So. 3d 595, 598 (Fla. 2d DCA 2014) (citation omitted). An insured's failure to give timely notice under such a provision is "a legal basis

---

[1] The record reflects that the condominium association paid for the repairs to the interior of the wall because such repairs are its responsibility.

for the denial of recovery under the policy." Ideal Mut. Ins. Co. v. Waldrep, 400 So. 2d 782, 785 (Fla. 3d DCA 1981).

A two-step analysis determines whether an insured's untimely reporting of loss results in the denial of coverage. 1500 Coral Towers Condo. Ass'n v. Citizens Prop. Ins. Corp., 112 So. 3d 541, 543-45 (Fla. 3d DCA 2013); LoBello, 152 So. 3d at 599. The first step focuses on whether the insured provided timely notice. Id. If the insured provided timely notice, of course, coverage cannot be denied. Id. But even if the insured's notice was untimely, the insured has the ability to prove that the insurer was not prejudiced by the untimely notice. During this step, prejudice to the insurer is presumed and the insured bears the burden of proving otherwise. Bankers Ins. Co. v. Macias, 475 So. 2d 1216, 1218 (Fla. 1985); 1500 Coral Towers, 112 So. 3d at 544-45; LoBello, 152 So. 3d at 599 ("In the second step, the insured must overcome the presumption by proving that the insurer was not prejudiced by noncompliance with the condition of timely notice.").

This two-step analysis begins with a reading of the insurance policy at issue. In this case, the policy required "prompt" notice of a loss to covered property: "[i]n case of a loss to covered property, you must . . . Give prompt notice to us, or your producer, who is to give immediate notice to us. . . . [and] [s]end to us, within sixty (60) days after our request, your signed, sworn proof of loss." "Prompt" is undefined in the policy. It is well settled, however, that "prompt" and other

7

comparable phrases, like "immediate" and "as soon as practicable," do not require instantaneous notice. Cont'l Cas. Co. v. Shoffstall, 198 So. 2d 654, 656 (Fla. 2d DCA 1967). Instead, Florida courts have interpreted these phrases to mean that notice should be provided "with reasonable dispatch and within a reasonable time in view of all of the facts and circumstances of the particular case." Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co., No. 13-12486, 2015 WL 106862, at *3 (11th Cir. Jan. 8, 2015) (citation omitted). "Notice is necessary when there has been an occurrence that should lead a reasonable and prudent [person] to believe that a claim for damages would arise." Waldrep, 400 So. 2d at 785. Thus, the issue of whether an insured provided "prompt" notice generally presents an issue of fact. LoBello, 152 So. 3d at 600.

Of course, this issue of fact may sometimes be resolved by summary judgment. In the context of hurricane damage claims, courts have upheld summary judgment on the insured's failure to provide "prompt" notice where the insured was aware of damage to the residence shortly after the hurricane, but, for a variety of reasons, waited until several years passed before notifying the insurance company. See, e.g., 1500 Coral Towers, 112 So. 3d at 543-44 (upholding summary judgment on the insured's failure to give "prompt" notice of roof damage caused by a hurricane where the insured was aware of roof damage one month after the hurricane, but waited more than four years to report the damages because it was

8

unsure if the damages would exceed the policy deductible); see also Yacht Club, 2015 WL 106862, at *4 (explaining that "prompt" notice is generally a jury question, but "Florida courts have interpreted 'prompt' differently when damage is caused by a known event, such as a hurricane, or when the insured was on-site when readily apparent problems developed").

Based on the summary judgment record before us, however, damage to Laquer's unit or the interior of the wall was not apparent until several years after Hurricane Wilma: no one, including Laquer, her tenant, her housekeeper, and the condominium manager and his agents who regularly visited Laquer's unit, was able to observe any damage to the wood flooring or walls of the unit prior to September 2008 or was otherwise put on notice to further inspect for damage.

Thus, issues of fact exist concerning when a reasonable and prudent person would believe that a potential claim for damages might exist. See LoBello, 152 So. 3d at 601-02. Contrary to Citizens' contention, the hurricane itself was not necessarily the event that would trigger the notice requirement, given the absence of apparent damage to any of Laquer's property following the storm. Contrary to Laquer's suggestion, her duty to provide notice under the policy was not necessarily triggered when she became aware of the full extent of the damage or when she determined that Hurricane Wilma was the cause of the damage. See 1500 Coral Towers, 112 So. 3d at 543-44 ("When an insurance contract contains a

9

provision which applies to notice of the damage claim, an insured must give notice of the loss that implicates a <u>potential</u> claim without waiting for the full extent of the damages to become apparent.") (emphasis added); <u>Waldrep</u>, 400 So. 2d at 785 ("[T]he insured could not wait until the full extent of the damage to the aircraft was apparent, because the policy covered any 'occurrence' resulting in injury to the aircraft."); <u>Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac. Ins. Co.</u>, No. 10-24310-CIV, 2012 WL 266438, at *4 (S.D. Fla. Jan. 30, 2012) ("The insurance contract required that [the insured] give notice of loss or damage, without regard for whether it intended to submit a claim or whether it determined that the loss was covered under the policy.").

    <u>Soronson v. State Farm Florida Insurance Co.</u>, 96 So. 3d 949 (Fla. 4th DCA 2012), does not mandate a contrary result because it involved a policy with a different notice provision. In <u>Soronson</u>, the policy provided that "[a]fter a loss . . . [the insureds] shall . . . give immediate notice to [the insurer]" and "submit to [the insurer], within 60 days after the loss, [the insureds'] signed, sworn proof of loss." <u>Id.</u> at 950. The Fourth District held that the insureds' duty to provide notice ran from the date of loss, not the date of reasonable discovery, because the policy language at issue required notice and a sworn proof of loss within a fixed time from the date of the loss. <u>Id.</u> at 952. Unlike <u>Soronson</u>, the policy language here does not tie the notice and proof of claim to a fixed time from the date of loss.

10

The next issue we must resolve is whether we should also reverse for a new trial on the issue of prejudice, which the jury resolved in favor of Citizens. When remanding a cause, an appellate court should preserve as much of the work of the trial court and jury as possible. This approach serves the interest of judicial economy and shields the parties from the expense and delay of redundant litigation. In this case, however, the legal issues of "prompt" notice and prejudice cannot be tried separately because both are tied to the factual issue of when Laquer's duty to provide notice was triggered. Accordingly, we reverse and remand for a new trial on both legal issues.

Reversed and remanded for further proceedings consistent with this opinion.