DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**YOU RESTORATIONS LLC,** a/a/o
**CORINA DE LEON** and **CESAR DE LEON,**
Appellant,

v.

**FIRST PROTECTIVE INSURANCE COMPANY,** d/b/a
**FRONTLINE INSURANCE,**
Appellee.

No. 4D2024-1553

[July 23, 2025]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Ellen Feld, Judge; L.T. Case No. COINX22-078292.

Lynn A. Brauer and Rebecca A. Gallagher of Insurance Trial Lawyers, Miami, for appellant.

Elizabeth K. Russo of Russo Lima Appellate Firm, P.A., Miami, for appellee.

WARNER, J.

Appellant You Restorations ("YR"), under an assignment of benefits from insured homeowners, challenges a final summary judgment on its insurance breach of contract claim. The trial court determined no issue of material fact existed that the damage to the insured home was not a covered claim under the policy. While appellee Frontline concedes the record contains disputed evidence as to causation, Frontline contends no genuine issue of material fact exists as to the insureds' late notice of the claim and resulting prejudice. We agree that the summary judgment may be upheld on this alternative claim. We thus affirm.

The insureds, husband and wife, purchased an all-risk insurance policy from appellee Frontline for their home. The policy contained exclusions from coverage, including wear and tear and repeat seepage or leakage. In the event of a loss, the policy required the insureds to give "prompt" notice to Frontline and to take reasonable measures to protect the property from further damage.

On March 21, 2022, the insureds reported a windstorm loss to Frontline caused by a storm occurring on April 26, 2020, a date within the policy period. Frontline followed up with a letter informing the insureds that the company was investigating the claim, but the 694-day delay between the storm and the insureds reporting the damage "may have prejudiced [Frontline's] ability to independently confirm the cause, origin, date of loss and duration of the reported damages." Frontline also reserved all of its rights under the policy.

A Frontline adjuster came to the home to observe the damage. She also took a recorded statement from the insured husband. In the statement, the insured husband explained that a contractor with YR had come to the house in March 2022 to examine a bathroom leak. The insured husband said, "that is when I made them aware [of a stain in the garage], but that stain I had seen it for a long time, but I had not acted on it." When the adjuster stated that the insureds had reported April 26, 2020 as the loss date, the insured husband responded a storm had occurred that day. The insured husband then said, "I do remember a little shortly after that, that is when I started seeing the damage in the garage, the leaking, but I had not acted on it[.] I was letting it be."

The insured husband continued to explain to the adjuster how he had showed the contractor the garage damage:

> I took advantage when the people from "You Restoration" came I talked to them about that because it had gone on for a while because I had also noticed that some of the wood ended becoming rotten it's the one that is at the front and it is related to that corner where that leak was, so they checked it and if (sic) fact they confirmed that the damage had spread.

The adjuster asked about when the insureds first saw the damage:

> (Adjuster): OK so the first time it was in April 26, 2020, but you didn't do anything you noticed it weeks later there was a stain in the ceiling inside the garage you saw a stain and what was the stain more than once or?
>
> (Insured husband): No, it was there, and it continued growing.
>
> (Adjuster): And it continued growing?

2

> (Insured husband): And then I noticed some shingles were already broken on top.

The insured husband said he had mentioned seeing the stain to his wife, telling the adjuster: "[S]he said we have to do something about that, but we did not act on it, I did mention it to her." The adjuster questioned why the insureds had not reported the claim:

> (Adjuster): So then can you then explain to me, I know you didn't act at that moment, the stain kept getting bigger throughout time, is there a reason you did not report the claim when it happened or when you found out about it?

> (Insured husband): No, a word we use, procrastinate, I did not act at that moment, the problem was there but it was not big it continued growing throughout the rain, so it was until now when they came for the bathroom, that's when I mentioned that to them they went over and looked at it and they said we have to act on this otherwise this will continue to grow every rain season that's when these people started working here. Although they mentioned that if I didn't do anything about it, the roof problem would continue even after they fixed the inside.

Although the insured husband had not been up on the roof, he told the adjuster that workers who came to clean the tile roof each year had been up there and saw damaged tiles. The damaged tiles were in different parts of the roof but concentrated over the garage. The last time someone had been up on the roof to clean was approximately ten months before the interview.

The insured husband described the damage to the interior as "in the garage, that part of the stain when you open it there was water and there is the wood that is underneath the roof tile that is rotten, and there is also a beam in front of the house that is rotten." Tiles were also damaged, and "[t]hat is why the water seeps through."

The insureds had not made any roof repairs or taken any steps to protect the property from further damage prior to YR's appearance. YR placed a tarp on the roof and placed equipment to dry out the garage.

Frontline informed the insureds that it was denying coverage for their loss. The denial letter incorporated the policy's post-loss duties and stated, "Failure to notify Frontline of the loss as soon as possible may have

prejudiced our ability to independently confirm the cause, origin, date of loss and duration of the reported damages." The letter also stated that Frontline's engineer had determined the damage to the insureds' roof and garage was the result of normal wear and tear.

YR, as the insureds' assignee,[1] initiated the instant lawsuit alleging breach of contract against Frontline for failing to indemnify a covered loss and alleging damages. Frontline filed an answer and affirmative defenses, denying it had breached the policy. Frontline's affirmative defenses alleged that the insureds' damages were caused by events excluded under the policy, and the insureds had failed to comply with the policy's post-loss duties, namely the duties to promptly notify Frontline of the damage and to take reasonable measures to protect the property from further damage.

Frontline filed a motion for final summary judgment. Frontline's primary argument was that the insureds had failed to comply with their post-loss obligations, prejudicing Frontline's investigation of their claim. Frontline also argued that the loss was caused by wear and tear, deterioration, insufficient maintenance and long-term seepage of water. In support, Frontline attached engineering and expert affidavits stating the damage was wear and tear. Frontline also attached the insured husband's recorded statement and excerpts from the insured husband's deposition taken after suit was filed.

The insured husband's deposition excerpts were in sharp contrast to his recorded statement. In the deposition, when asked, the insured husband claimed he did not know the date of loss, and did not remember how often he had his roof pressure cleaned. When asked about the reporting of the claim, the insured husband stated that YR had pointed out stains in the garage over the door which could have been caused by humidity. He did not recall the stains' color or size, other than to say that, compared to the whole ceiling, the stains were small. He had noticed the stains before YR showed the stains to him, but he could not recall when. He guessed somewhere between six months to a year prior to YR's examination. He explained:

> The thing is I didn't pay attention to that since, in the garage, you do things. It could have been smoke from the car or dirt.

---

[1] "The assignee steps into the shoes of the assignor and is subject to all equities and defenses that could have been asserted against the assignor had the assignment not been made." *State v. Fam. Bank of Hallandale*, 667 So. 2d 257, 259 (Fla. 1st DCA 1995).

I don't know.  I'm not a professional.  So it could have been, like, just dirt, something like that.

The insured husband could not say how big the stain was and conceded that Frontline had no way to know what the stain looked like when he first noticed it.

When asked why it took him twenty-three months from the date of the loss on April 26, 2020, to report the claim, the insured husband responded, "I don't know about those dates."  He did not remember how he came up with the loss date.

YR's response to Frontline's motion for summary judgment objected to Frontline furnishing only excerpts of the deposition, arguing that the excerpts should not be considered under the doctrine of completeness.  However, YR did not attach the complete deposition or any different excerpts to its response to the motion.  Instead, YR attached its own expert's report opining that the 2020 storm had damaged the insured home.  Regarding the post-loss duties, YR argued the fact that Frontline had been able to make a coverage determination based on policy exclusions precluded Frontline from asserting prejudice to its investigation as a defense.  YR did not address the insured's recorded statement to the adjuster.

The trial court entered an order granting the motion for summary judgment, finding Frontline was entitled to summary judgment, because the loss was caused by an exclusion.  The court did not reach the post-loss duties issue and dismissed the case with prejudice.  YR filed a motion for rehearing, which largely made the same arguments as its response to Frontline's motion.  The trial court denied the motion for rehearing.  This appeal follows.

## Analysis

The standard of review of an order granting summary judgment is de novo.  *All Purpose Title, LLC v. Knobloch*, 397 So. 3d 85, 88 (Fla. 4th DCA 2024).  "Summary judgment is appropriate where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Id.* (quoting Fla. R. Civ. P. 1.510(a)).

YR contends that the court erred in granting summary judgment, because material issues of fact remain.  Frontline concedes that material issues of fact remain as to causation, because the expert affidavits are conflicting as to whether the property damage was a result of a covered

5

cause. Frontline contends, however, that it is still entitled to summary judgment, because no genuine issue of material fact exists that the insureds provided late notice of the claim, which had prejudiced Frontline's ability to investigate the claim. While the trial court did not rule on this argument, Frontline raised the argument in the motion for summary judgment. We thus apply the "tipsy coachman" doctrine. *See Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644–45 (Fla. 1999) (holding that, even when based on erroneous reasoning, a conclusion or decision of a trial court will generally be affirmed if the evidence or an alternative theory supports it). When the issue is raised in the summary judgment motion, the appellate court should "determine if the evidence supports the trial court's decision to grant summary judgment, even if for the wrong reason." *Hope v. Citizens Prop. Ins. Co.*, 114 So. 3d 457, 459 (Fla. 3d DCA 2013). Here, Frontline raised the issue of late notice and prejudice in its motion. Therefore, we review the record to determine if summary judgment can be affirmed on this ground.

## Summary Judgment Procedure

Florida Rule of Civil Procedure 1.510, as amended in 2021, changed the standard for granting summary judgment. Rule 1.510 "shall be construed and applied in accordance with the federal summary judgment standard." In amending rule 1.510, our supreme court explained that Florida would now follow the *Celotex*[2] trilogy from the United States Supreme Court. *In re Amends. to Fla. Rule of Civ. Proc. 1.510*, 317 So. 3d 72, 75 (Fla. 2021). The court listed three features which now govern the Florida summary judgment rule:

> First, those applying new rule 1.510 must recognize the fundamental similarity between the summary judgment standard and the directed verdict standard. *See Anderson*, 477 U.S. at 251, 106 S. Ct. 2505 (noting that "the inquiry under each is the same"). Both standards focus on "whether the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-52, 106 S. Ct. 2505 . . . .
>
> Second, those applying new rule 1.510 must recognize that a moving party that does not bear the burden of persuasion at trial can obtain summary judgment without disproving the nonmovant's case . . . .

---

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

And third, those applying new rule 1.510 must recognize that the correct test for the existence of a genuine factual dispute is whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505. Under our new rule, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). In Florida it will no longer be plausible to maintain that "the existence of any competent evidence creating an issue of fact, however credible or incredible, substantial or trivial, stops the inquiry and precludes summary judgment, so long as the 'slightest doubt' is raised." Bruce J. Berman & Peter D. Webster, *Berman's Florida Civil Procedure* § 1.510:5 (2020 ed.) (describing Florida's pre-amendment summary judgment standard).

*Id.* at 75-76.

*Anderson* notes that the issue is not whether some opposing evidence is presented, but whether the evidence is sufficient to submit to the jury or so one-sided as to require a directed verdict:

[T]he "genuine issue" summary judgment standard is "very close" to the "reasonable jury" directed verdict standard: "The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted." *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745, n. 11, 103 S.Ct. 2161, 2171, n. 11, 76 L. Ed. 2d 277 (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

477 U.S. at 251-52.

Procedurally, the rule requires the moving party to state each claim or defense upon which it seeks summary judgment. Fla. R. Civ. P. 1.510(a). The party must also file a supporting factual statement. Fla. R. Civ. P.

1.510(c)(1).  A non-moving party must file a response together with that party's factual statement.  Fla. R. Civ. P. 1.510(c)(5)  As to the factual statements, rule 1.510(c) provides:  "A party asserting that a fact cannot be or is genuinely disputed **must** support the assertion by: (A) citing to particular parts of materials in the record . . ." or showing that the materials do not establish the absence of a genuine dispute.  Fla. R. Civ. P. 1.510(c) (emphasis added).  With these principles in mind, we examine the issue and evidence in this case.

**Applicable Law**

Frontline's insurance policy required the insured to give prompt notice of a claim.  "The purpose of a provision for notice and proofs of loss is to enable the insurer to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition upon it."  *LoBello v. State Farm Fla. Ins. Co.*, 152 So. 3d 595, 598 (Fla. 2d DCA 2014) (quoting *State Farm Mut. Auto. Ins. Co. v. Ranson*, 121 So. 2d 175, 180 (Fla. 2d DCA 1960)).

When prompt notice is not given, the insurer may deny coverage unless the insured can show that the insurer has not been prejudiced by the delay in notice:

> The failure to give timely notice is a "legal basis for the denial of recovery under the policy." *Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782, 785 (Fla. 3d DCA 1981).  Under Florida law, the "question of whether an insured's untimely reporting of loss is sufficient to result in the denial of recovery under the policy implicates a two-step analysis." *LoBello v. State Farm Fla. Ins. Co.*, 152 So. 3d 595 (Fla. 2d DCA 2014).  The first step is to determine whether the insured provided timely notice. *Id.*  Next, if notice was untimely, prejudice to the insurer is presumed, but that presumption may be rebutted. *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1218 (Fla. 1985).

*Yacht Club on the Intracoastal Condo. Ass'n v. Lexington Ins. Co.*, 599 F. App'x 875, 879 (11th Cir. 2015).

Timely Notice

"The duty to notify is triggered 'when a reasonable person, viewing all available facts and information, would conclude that an award implicating the policy is likely.'"  *Sec. First Ins. Co. v. Visca*, 387 So. 3d 313, 318 (Fla. 4th DCA 2024) (quoting *Cordero v. Fla. Ins. Guar. Ass'n*, 354 So. 3d 1150,

8

1153 (Fla. 2d DCA 2023)); *see also LoBello*, 152 So. 3d at 599; *Waldrep*, 400 So. 2d at 785-86. "[W]here an insured allegedly sustained property damage due to a hurricane, Florida courts have often found that the insured's initial discovery of that damage triggered the duty to notify, at least when the damage first appeared shortly after the storm." *Visca*, 387 So. 3d at 318. We think the same may be said for a tropical storm or any windstorm event where the insured notices damage to property after the storm.

In this case, no genuine dispute exists that the insureds gave very late notice of the claim. The windstorm event occurred in April 2020, and the insureds did not notify Frontline until March 2022. According to the insured husband's statement to the adjuster, the insureds noticed a stain on the ceiling of their garage only a few weeks after the storm, which only grew over time. The insured husband was also alerted to problems with his roofing tiles by workers who had pressure cleaned the roof, at least ten months prior to submitting the claim. The insured husband admitted that he had not done anything about the roof or submitted the claim simply due to "procrastination."

Courts have found that such a passage of time between an insured first noticing damage and reporting it constitutes failure to provide prompt notice as a matter of law. *See Visca*, 387 So. 3d at 320 ("In sum, because Mr. Visca's duty to notify was triggered upon his discovery of the roof damage in 2018, and he concededly failed to provide notice until February 2020, well over a year later, notice was not prompt as a matter of law, and Security was entitled to a directed verdict on that discrete issue."); *Navarro v. Citizens Prop. Ins. Corp.*, 353 So. 3d 1276, 1280 (Fla. 3d DCA 2023) (internal citation omitted) (quoting *Laquer v. Citizens Prop. Ins. Corp.*, 167 So. 3d 470, 474 (Fla. 3d DCA 2015)) ("In the instant case, Navarro conceded in his deposition that in the days, weeks, and months after Hurricane Irma made landfall, he noticed leaks throughout his residence. . . . Nonetheless, Navarro waited two years and seven months to report the claim. Under these circumstances, it is scarcely debatable Hurricane Irma constituted 'an occurrence that should lead a reasonable and prudent man to believe that a claim for damages would arise.' Thus, Navarro failed to act 'with reasonable dispatch and within a reasonable time.'"); *Laquer*, 167 So. 3d at 474 (noting that Florida courts have found failure to provide prompt notice as a matter of law "where the insured was aware of damage to the residence shortly after the hurricane, but, for a variety of reasons, waited until several years passed before notifying the insurance company"); *LoBello*, 152 So. 3d at 600 ("[I]f the undisputed evidence will not support a finding that the insured gave notice to the

insurer as soon as practicable, then a finding that notice was timely given is unsupportable.").

YR contends that the insured husband's deposition testimony presents competing evidence regarding when the insureds noticed the damage. We disagree. First, YR's summary judgment response failed to support its claim that a genuine issue of material fact remained as to the notice and, in fact, did not even mention or discuss notice in its response. Therefore, YR failed to provide summary judgment evidence showing a *genuine* disputed issue of material fact. Moreover, the insured husband's vague and mostly non-responsive deposition testimony was so "blatantly contradicted" by his statements to the insurance adjuster that the deposition testimony would not have prevented a directed verdict from being issued by the court.[3] *See In re Amends. to Fla. R. Civ. P. 1.510*, 317 So. 3d at 75–76 (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) ("Under our new rule, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'"). Therefore, we conclude that the insureds did not provide prompt notice of the claim, and summary judgment on that issue is proper.

## Prejudice

"If the insured breaches the notice provision, prejudice to the insurer will be presumed, but may be rebutted by a showing that the insurer has not been prejudiced by the lack of notice." *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1218 (Fla. 1985). "The burden should be on the party seeking an avoidance of a condition precedent." *Id.*

The insurer can be prejudiced by the lack of timely notice in its ability to investigate the facts and determine the cause of the damage and thus whether the loss is covered. *See, e.g.*, *Stark v. State Farm Fla. Ins. Co.*, 95 So. 3d 285, 287–88 (Fla. 4th DCA 2012). The delay may also prevent the insurer from evaluating the extent of the damages. *See De La Rosa v. Fla. Peninsula Ins. Co.*, 246 So. 3d 438, 441 (Fla. 4th DCA 2018). If the delay has added to the repair cost, the insurer has been prejudiced.

YR argues that because Frontline was able to determine the loss was caused by a policy exclusion, Frontline should be precluded from arguing

---

[3] YR also never objected to the statement as not being admissible. *See* Fla. R. Civ. P. 1.510(2).

10

that the insureds' failure to provide prompt notice prejudiced Frontline's investigation. The cases on which YR relies, however, do not involve a denial based on failure to comply with reporting duties. *See Keel v. Indep. Life & Accident Ins. Co.*, 99 So. 2d 225, 227 (Fla. 1957) ("The rule seems to have been well settled that when an insurer denies liability during the period prescribed for the presentation of proof of loss on grounds not relating to the proof of loss, such denial will ordinarily be considered as a waiver of the provisions of the policy requiring the filing of a proof of loss. The reason for the rule is simply that the law will not require the doing of a useless thing."); *Ifergane v. Citizens Prop. Ins. Corp.*, 232 So. 3d 1063, 1065 (Fla. 3d DCA 2017) (holding the insured's failure to provide an examination under oath was not prejudicial when the insured denied coverage based upon causation).[4] Thus, the fact that Frontline also denied coverage based on a policy exclusion does not, by itself, rebut the presumption of prejudice from the insureds' untimely notice. A denial only absolves the insured of further post-loss duties.

An examination of the summary judgment evidence shows that YR failed to rebut the presumption of prejudice. First, the insured husband's recorded statement shows on its face that the damage increased over the years since the storm. The insured husband stated that the stain grew, and he noticed that a beam was starting to rot. The wood under the roof tile also was starting to rot. The stain grew every time it rained. Thus, the insureds' failure to protect the property from further damage also shows how Frontline was prejudiced.

YR's brief also contends that its expert's report and affidavit show that the expert was able to ascertain the cause of the loss, thus rebutting the presumption of prejudice. As to the cause of the loss, we agree that the affidavit raises a material issue of fact. But the affidavit does not rebut the presumption that the late notice prejudiced Frontline in determining the extent of the loss. The appellant's expert's affidavit and report, when read carefully, shows that damage was ongoing. It states, "[a]dditionally, the water damage, including stains and moisture remediation observed on the interior finishes as consistent with damage from moisture intrusion **associated with multiple upgradient moisture penetrations**, storm-induced rainwater intrusion through openings, and imperfections that occurred initially during the storm." (Emphasis added.) Furthermore, the

---

[4] While the court in *Hartford Accident & Indemnity Co. v. Phelps*, 294 So. 2d 362, 365 (Fla. 1st DCA 1974), rejected an insurer's argument that even if a loss was covered under the policy, its coverage denial was rightful because of untimely notice, the court did not hold that an exclusion-based denial will always rebut prejudice, but only found no prejudice under the case's unique facts.

report attached to the affidavit states, "[m]oisture observed during our on-site assessment was consistent with being the result of **multiple upgradient rainwater intrusions into and through the building envelope** via imperfections and damages such as cracks, separations, and penetrations, including roof penetrations classified as storm-induced openings in the building envelope." (Emphasis added.)  While the storm may have opened the cracks and allowed water to penetrate, the damage was ongoing with every rain event, as is apparent from the insured husband's recorded statement.  YR has not provided any evidence "that the condition of the Property was in the same condition as it was right after the storm." *PDQ Coolidge Formad, LLC v. Landmark Am. Ins. Co.*, 566 Fed. Appx. 845, 850 (11th Cir. 2014).  The evidence would not be sufficient to oppose a directed verdict, and thus is insufficient to prevent summary judgment.

## Conclusion

Summary judgment was appropriate on the issue of notice where the insureds' notice of claim was filed almost two years after the windstorm event claimed to be the cause of a leak that the insureds knew about but failed to report, because the insured husband admittedly procrastinated. Summary judgment was also proper on the issue of prejudice because YR failed to provide evidence to rebut the presumption that Frontline had been prejudiced by the late notice.  Further, the insured husband's recorded statement and YR's expert's report showed that the property damage increased between the event and the claim.  As to the remaining issues raised by YR, we affirm without further discussion.

*Affirmed.*

GERBER and FORST, JJ., concur.

\*       \*       \*

***Not final until disposition of timely filed motion for rehearing.***